## NETHERY et ux. vs. PAYNE.

The grant of an injunction was error. There was nothing in this case to warrant the restraining of parties in possession of land from the free use of it and the ore thereon. There was no charge of insolvency as to the claimant of the title; and no notice of the claim of complainants was shown.

(a.) Though one may hold a bond for titles to land, with purchase money paid, if a subsequent deed be made by the same vendor to a purchaser for value and without notice, and it is recorded in proper time, it will take precedence.

(b.) Equity will not restrain waste, except upon unquestioned evidence of complainant's title; and where the defendant is in possession under adverse title, or where complainant's title is not clear, the relief will be refused.

(c.) Prescriptive title being shown by the holder of land, an injunction will not be granted to restrain the free use thereof and of the minerals thereon; especially where complainant's title is not free from doubt.

November 27, 1883.

Title. Bond for Titles. Equity. Injunction. Waste. Prescription. Before Judge FAIN. Dade County. At Chambers. October 8, 1883.

Reported in the decision.

W. N. & J. P. JACOWAY; GRAHAM & GRAHAM, for plaintiffs in error.

T. J. LUMPKIN; R. J. McCAMY; McCUTCHEN & SHUMATE, for defendant.

HALL, Justice.

The complainant, by his bill, states that Pace, on the 17th day of June, 1865, sold to one Gross, on credit, several lots of land, and among the rest, lot number 288, in the 10th district and 4th section of Dade county, and obligated himself by bond to convey titles to the same when Gross should pay the purchase money agreed upon. Gross assigned this contract to the complainant as to all the land except the said lot number 288, and agreed to convey him the iron ore in the same when he should comply with Gross's contract with Pace. Pace, it seems, ratified this arrangement by having complainant to sign Gross's notes That complainant paid this amount and entitled himself to a deed, in 1870. He brought his bill against Pace and Gross to compel a specific performance of this contract. He claims to have exercised dominion and control over the ore in lot 288 from the time of his purchase, by showing and offering it for sale; that notice of his claim was thus given, and among others, to respondents; that sometime after the purchase money was paid, Pace sold to defendant, Mary, a portion of this lot, and made her a conveyance of the same without excepting the said iron ore; that this sale was made in pursuance of a confederacy between Pace and the defendants; that they have only recently taken possession of the land, and are mining the

ore on the same, and that defendant, W. F. Nethery, is insolvent; that this mining of ore commenced since the institution of the suit against Pace and Gross to compel a conveyance of the same. An amendment to the bill set forth that Pace executed a deed to Gross for the lot on the 27th day of March, 1870, which was duly recorded on the —— day of April of the same year. The prayer was for an injunction to stay the mining of the ore, until the final hearing and determination of the bill brought by complainant against Pace and Gross in Dade superior court, and which had been set for trial at the September term, 1883, of that court.

Upon the presentation of this bill, the chancellor passed an order calling upon defendants, at a time and place named therein, to appear and show cause why the injunction should not issue as prayed.

In response to this order, they appeared and showed for cause, by their sworn answer, that they were strangers to and knew nothing whatever of the dealings between complainants, Pace and Gross, concerning the premises in dispute; that defendant, Mary, who is the wife of the other defendant, purchased the land from Pace in February, 1870; paid him half the purchase money down, and took his bond to make her titles when the balance of the same was paid; that under this contract they went immediately into posssssion; that Pace was, at the time, in the undisputed possession of the land which he delivered to them, and then had title to the same, and that they have since been in the peaceable and exclusive possession of the same; that they had no notice whatever of any adverse claim thereto, and having paid the balance of the purchase money, in pursuance of the contract, Pace made the said Mary a deed to the land on the 23d day of September, 1879, which was duly recorded on the 24th day of January, 1880; that, at the date of said contract and conveyance, they had no notice of any adverse claim, and asked protection as *bona fide* purchasers without notice. Complainant, in response to

this showing, read his own affidavit, in which he swore that the suit he brought against Pace and Gross for the specific performance of their contract for the iron ore had terminated in his favor, and that a decree had been entered upon the verdict of the jury rendered therein; that, notwithstanding this, defendants still kept possession of the portion of the lot claimed by them; and that the ore thereon was worth two thousand dollars. He also exhibited and relied on a deed made by Pace to Gross for the entire lot. This deed was executed on the 9th of December, 1868, and recorded on the 29th of March, 1870. This deed, on its face, shows nothing of any former contract existing between these parties touching the lands thereby conveyed.

In reply, the defendants gave in evidence a *fi. fa.* issuing from Dade superior court, in favor of Pace, and against Gross and complainant, together with a levy of the same on this lot of land. Under the levy, the land was sold, and purchased by Pace, who took the sheriff's deed thereto in March, 1870, and which was duly recorded on the 29th day of the same month. It was admitted that Pace, under whom all parties claim, had title when he sold to Gross, and when Gross assigned his contract to complainant. The deed from Pace to Mrs. Nethery was exhibited on the hearing, and is set out in the record. Nothing more appears of the suit in favor of complainant against Pace and Gross than what is set forth in the complainant's affidavit.

Upon this showing, the injunction was ordered to issue, as prayed, unless the defendants would give bond in the sum of eight hundred dollars for the eventual condemnation money.

To this order exception was taken, and the case was brought to this court by writ of error.

This injunction should not have been ordered. There is nothing, so far as this record discloses, to justify any restraint upon the defendants in the use of this land and ore. It is not even stated that Mrs. Nethery is unable to respond to any verdict that complainant might get against her for

the alleged trespass of herself and husband. The bill charges the defendants with notice of the adverse claim of complainant, but so far as concerns actual notice there is not the least proof of anything to put a prudent person upon inquiry. At the time of defendant's purchase, Pace was in possession, which he turned over to them. It is very evident that complainant never had possession, or exercised any dominion or control over the premises.

Admitting that constructive notice, such as arises from the registry of conveyances, would have been sufficient to charge the defendants (and we do not decide that it would be), then how stands the proof upon this subject? A deed is shown from Pace to Gross. Subsequently this land is sold by the sheriff as Gross's property, and purchased by Pace; both deeds—the older from Pace to Gross, and the younger, the sheriff's to Pace—are recorded on the same day, and Pace goes into possession. The record shows, if it shows anything, that the title was in Pace.

The pendency of the suit in favor of complainant against Gross and Pace for the recovery of the minerals in the land is not, under the circumstances, notice to affect these defendants, they are not parties to that litigation; it does not appear when it commenced; whether the suit was instituted before or after the defendants made and consummated the purchase. The clearest inference would be, from the order of events, that it was begun after this transaction was ended.

The complainant can take nothing from the fact that he claimed under a bond for titles with the purchase money paid, since a subsequent conveyance to a purchaser for value, who bought without notice of the bond, and had his deed recorded in time, would be protected. 29 *Ga.*, 485.

It does not appear from this bill but that Pace, the complainant's vendor, is solvent, and would be liable upon his bond for failing to make the title and give possession in conformity thereto, or that this would not be adequate compensation for any injury complainant has sustained.

If there were any necessity to do so, we think it would be easy to show that the defendant, Mary, had at least a good prescriptive title.    32 *Ga.*, 307; 44 *Ib.*, 274, 277; 53 *Ib.*, 655 ; and this, coupled with her continuous possession, would prevent the issuing of any injunction against her use of the land and minerals, especially where complainant's title is not free from doubt or dispute.

" It may be laid down as a general rule, that equity will not restrain waste except upon unquestioned evidence of complainant's title; and where the defendant is in possession under adverse title, the relief will be refused.    Nor will equity interfere by injunction to prevent waste when complainant's title is not clear, since the relief is granted only when the title is free from dispute.    *    *    *    And when there is grave doubt whether an action at law could be sustained for the alleged waste, it is proper to refuse a preliminary injunction."    High on Inj., §651, and cases cited in notes.    Among others, is that of Pillsworth *vs.* Hopton, 6 Ves., 51, in which Lord Eldon said: " I remember perfectly being told from the bench very early in my life, that if the plaintiff filed a bill for an account and an injunction to restrain waste, stating that the defendant claimed by a title adverse to his, he stated himself out of court as to the injunction."    The reporter adds : "His lordship having inquired if the bar knew any instance, and none being produced, would not make the order."

Though, in legal strictness, the acts complained of here do not amount to waste, yet they bear to it a close resemblance, and redress for injuries resulting therefrom depends upon the same principles as to such trespasses, see Code §3219.

Judgment reversed.