Silva *et al. vs.* Rankin *et al.*

1. Where one who had possession of certain deeds and papers testified that they were lost or destroyed, and the clerk of the superior court testified that a portion of the records in his office in which deeds were recorded about the time of the sales in pursuance of which the deeds were made, were destroyed, and another witness testified that he had carefully examined the records of the ordinary's office, and that the records of the time of an administrator's sale involved in the controversy were destroyed and not in existence, this was a sufficient foundation for the introduction of parol

testimony; and on the hearing of an application for injunction, the contents of such papers could be shown by affidavits.

2. Where complainants filed a bill to enjoin the defendants from mining and carrying away ore from a certain lot of land, and on the hearing it appeared that the complainants had a title to the mineral interest in such land, and that in the title under which the defendants claimed there had been a reservation of the mineral interest by certain grantors, which had been sold under an execution against them, and had passed by regular chain of title to the complainants, and that a subsequent holder of the land had conveyed it to the father of one of the defendants (under whom such defendant claimed), reserving the mineral interest therein, and had afterwards attempted to convey such mineral interest to another, who made a conveyance of one-half thereof to another person, and the other defendant in the bill claimed the right to operate the mines under a verbal permission from the agent of such grantee, and under a lease from the other defendant; and where it was not denied that the defendants were insolvent, there was no error in granting an injunction.

(*a*) This case differs from that of *Nethery vs. Payne,* 71 *Ga.* 378.

December 14, 1887.

Evidence. Mines and mining. Title. Injunction. Before Judge FAIN. Bartow county. At chambers, May 11, 1887.

Reported in the decision.

J. A. BAKER, for plaintiffs in error.

MILLER, AKIN & HARRIS, *contra.*

SIMMONS, Justice.

Rankin *et al.* filed their bill against Silva and Culver, wherein they alleged that they were the true, lawful and only owners of all the ores, mineral interests and rights thereunto appertaining, in lot of land No. 274 in Bartow county; that said ores and interests are of the value of $20,000; that said Silva and Culver, without claim, warrant or authority, have entered upon said lot and are mining and carrying away therefrom large quantities of ore

and converting the proceeds to their own use, and have already carried away and converted to their own use 100 tons of the same, to the value of $1,000 or other large sum, and are intending to continue said trespassing; that said trespassing is destructive of the very substance of their estate in said lot of land. The bill further charges that said Silva and Culver are entirely insolvent. An injunction is prayed against said defendants, restraining them from mining and taking from said lot of land any ores or minerals, or from interfering with the same in any manner whatever.

The defendants answered the bill, and denied that the complainants were the lawful owners of said lot or any part thereof, or had any interest in the land, minerals or ore of any kind on said lot. They claimed that in December, 1859, one Bishop was in possession of said land and the owner of it, and made a deed of said lot to Gabriel Culver, the father of one of the defendants, Charles T. Culver, conveying said lot of land to Gabriel Culver, but reserving the mineral interests to himself; that said Culver, and those holding under him, remained in adverse possession of said land to everybody except Bishop and his assigns. The defendant, Silva, answering, says that on the 8th of November, 1876, said Bishop being in possession of said mineral interests, made and executed a deed to one E. H. Woodward to said mineral interests in said lot of land, and that on the 16th of November, 1878, Woodward conveyed an undivided half interest, by deed, to Charles C. Dodge; and by verbal permission and consent of J. H. Wikle and J. H. Baker, who, the defendant is informed and believes, are the agents of said Dodge, and by lease from said Charles F. Culver, he entered on said land and was engaged in mining thereon, and in carrying away and selling ores therefrom at the time the bill was filed. They deny that they are trespassers, and contend that they were lawfully in possession

of said land and the ores therein.   They do not deny their insolvency.

Upon the hearing of the bill and answer and affidavits, the court granted the injunction prayed for.   The defendants excepted and assigned the same as error.   They also assigned as error the court's admitting in evidence certain affidavits set out in the bill of exceptions, upon the grounds that the testimony was hearsay, and that it was an attempt to prove the contents of certain deeds, and that no foundation had been laid for the introduction of parol testimony as to the contents of the deed to Bullock and others.

1. It appears, from the evidence in the record, that in January, 1846, one David Hungerford sold this lot of land to Moses Stroup ; and that in June, 1846, Moses Stroup conveyed the same by deed to Cooper, Stroup & Wiley; that on the 1st of June, 1852, the privilege of using the ore of said lot was sold to Andrew Baxter by the United States marshal, by virtue of an execution in favor of Banks *vs.* Cooper, Stroup & Wiley.   Baxter, on 21st July, 1852, sold the same to Mark A. Cooper, and Mark A. Cooper, on 1st July, 1856, sold to Quinby & Robinson.   Quinby & Robinson, on the 30th of September, 1862, sold to the Etowah Manufacturing & Mining Company.   The Etowah Manufacturing & Mining Company, on 29th January, 1887, sold to the complainants.   All these deeds were properly recorded.   It also appears from the record that, before the sale by the United States marshal, Cooper, Stroup & Wiley had sold the land to Bullock, reserving the mineral interest therein.   Bullock died in possession, and his administrator sold the land at public sale to one Smith, and Smith sold the same to Bishop.   The affidavits objected to by the plaintiffs in error showed these facts, and the additional fact that when Bullock bought from Cooper, Stroup & Wiley, he only bought the surface of the lot, and that Cooper, Stroup & Wiley reserved all the mineral interests in said lot to themselves ; and that when the land

was sold at administrator's sale, the administrator of Bullock made the same reservation.

These last stated facts, to-wit, the sale by Cooper, Stroup & Wiley to Bullock, the sale by Bullock's administrator to Smith, and the sale by Smith to Bishop, and the fact of the reservation of the mineral interest of Cooper, Stroup & Wiley, and the reservation of the same interest in the land by Bullock's administrator, were objected to on the trial in the court below, on the ground that they were irrelevant, and upon the ground that the proper foundation had not been laid for the introduction of parol testimony.

·It will be remembered that Bishop held under Smith, who bought at the sale of Bullock's administrator.   Bishop' testified that all of his deeds were lost or stolen in 1861. The clerk of the superior court testified that a portion of the records in his office, in which deeds were recorded about the time of these sales, was destroyed by the army under Sherman.   Mr. Akin also testified that he had carefully examined the records in the ordinary's office, and the records which ought to have been made at the time of the administrator's sale of Bullock's land, were destroyed by Sherman's army, and no such records now existed. We think that this was a sufficient foundation for the introduction of the parol testimony.   The deeds which ought to have been delivered to Bishop by the administrator of Bullock, and which doubtless were delivered to him, he says were stolen from him in 1861.   The records which contained these deeds were destroyed.   The records of the ordinary's office, showing the appointment of an administrator, his application to sell and the order to sell, were also destroyed.   Here is, then, proof by Bishop of the original deeds and of their loss while in his hands; proof by the clerk that the records were destroyed ; proof by Mr. Aikin that the ordinary's records were also destroyed.   What more proof could be required in a proceeding before the chancellor, or even in a trial before the jury ?   We hold

that there was no error in admitting this parol testimony. This being true, did the court err in granting the injunction against the defendants?

There was a regular chain of title from Hungerford, in 1846, down to the complainants; and also evidence to show that Cooper, Stroup & Wiley sold this land to Bullock, reserving the mineral interest therein, and that this mineral interest was reserved in the deed from Bullock's administrator to Smith, and from Smith to Bishop. Both parties claim under Cooper, Stroup & Wiley. There can be no doubt, from the evidence in the record, that the mineral interest in this lot (No. 274), was reserved by Cooper, Stroup & Wiley, and was subsequently sold as their property by the United States marshal, and bought by Baxter, and transmitted by a regular chain of title to these complainants. The same record shows that Bishop never purchased said mineral interest, and therefore had no right to sell the same to Woodward, under whom these defendants claim.

2. The bill alleges that these defendants are trespassing upon and mining the ore in said lot, and that they are insolvent. They do not deny their insolvency. The facts in this record showing a perfect chain of title to the mineral interest in this lot in the complainants, and showing further that these defendants have no right or title to said mineral interest, and that they are mining and carrying away the ore from the lot, and that they are insolvent, we think the court did right in granting the injunction. It is true that Silva, one of the defendants, claims to be working the mines under the permission of the agents of the Dodge estate, and as lessor from his co defendant, Culver. The record shows, as said before, that while Culver's father purchased the surface of the land from Bishop, the mineral interest was reserved in the deed made to him by Bishop. So he cannot claim anything from that source. The record does not disclose what the Dodge estate is, whether it is resident in Georgia or non-resident, nor

whether it is solvent or insolvent.	Even if it was a resi-
dent of the State, and solvent, the only authority that he
(Silva) claims from the Dodge estate is a verbal permis-
sion of the agents of said estate to work the mine.	We do
not think such authority as this, even from a resident
estate in Georgia, would authorize the defendant to work
this mine against the objection and protests of those who
have a perfect title thereto.	From the facts disclosed in
this record, the defendants are trespassers, and the court
did right in enjoining them from trespassing upon this
property.	The defendant in error, in his argument before
us, relied entirely upon the case of *Nethery vs. Payne*, 71
*Ga.* 378.	There is a wide difference between the facts re-
ported in that case, and the facts in this case.	In that
case the record shows that the complainant had no title to
the land in dispute, that he had only a bond for title, that
the obligor in the bond for title had sued on the note for
the purchase money, and had the land sold, and had pur-
chased it himself at the sheriff's sale, and had resold it to
the defendants.

Under the state of facts disclosed by this record, the
court did right in granting the injunction in this case, and
the judgment is therefore affirmed.