MURPHEY *v.* HARKER, and *vice versa.*

1. Under a deed which describes a lot as bounded on one side by an alley and conveys to the grantee the right of "ingress and egress from and to" a given street, no right to erect a permanent structure in or over such alley passes to the grantee, notwithstanding the presence of such structure may not interfere with the use of the alley as a mere passageway.
2. Where one who owned a parcel of land and also an alley which separated the land into two city lots conveyed to a person one of such lots, describing it as extending up to the alley, but giving to the grantee certain rights therein, and then conveyed to another person the other lot, which was described in the deed as being bounded on one side by that line of the alley which was adjacent to the lot first conveyed, the grantee in the second deed acquired under this description the fee in the alley, subject to the rights therein which had been conveyed in the first deed.
3. A deed conveying a described parcel of land, "with the appurtenances," conveys to the grantee as appurtenant to the land the right to the free and unobstructed use and enjoyment of an alley adjoining the property, which the grantor had laid out and set apart for such use, and the fee to which was at the time of the conveyance in the grantor.
4. One who is the owner of a building situated upon a lot adjoining an alley, in which such owner has the right of free and unobstructed use for all purposes incident to the ownership of an abutting lot, is entitled to an injunction to restrain the erection of a structure in that alley which will cause damage to the abutting property, upon proof showing to the satisfaction of the judge that the damage resulting from the erection of the structure would be irreparable.    In the present case there was not only evidence authorizing the judge

to find that the damages complained would be irreparable, but it appears that, upon the request of the parties, the judge himself viewed the premises, and, after so doing and considering the evidence, reached the conclusion that the damages would be irreparable.

5. One against whom an injunction has been granted is bound to obey the same as soon as he is informed of the fact that the injunction has been granted, although he may not have been then served with a copy of the writ.

6. When one who has notice that an injunction has been granted against him, though he has not been formally served with the writ, does an act which is a violation of the injunction, and thus changes the status of the property involved in the case, the judge may at an interlocutory hearing, or upon an application for an attachment for contempt, require the offender to restore the status as it existed at the time he first received notice that the injunction had been granted.

7. When in an application to restrain a trespass, upon the ground that the damages threatened would be irreparable, the defendant sets up title to the property adverse to that of the plaintiff, or questions the title of the plaintiff, a court of equity will by injunction restrain the trespass and preserve the status until the question of title can be settled at the final hearing; but where the defendant denies the title of the plaintiff, the trespass will be closely inquired into before the court will interfere by injunction.

8. The foregoing notes deal with all of the questions raised in the present case which require special notice. The conclusions of the judge on all the issues of law decided by him were correct. His findings on all questions of fact submitted to him were amply supported; and the judgment rendered, requiring the defendant to restore the property to the condition in which it was at the time the petition was filed, and enjoining him from altering the status as thus restored until the final hearing, will not be interfered with.

Submitted March 1, — Decided April 1, 1902.

Injunction.  Before Judge Holden.  Richmond superior court. June 12, 1901.

*M. P. Carroll* and *H. C. Roney*, for Murphey.  This being a proceeding to enjoin an alleged trespass, and the title being in dispute, the court had no right to interfere: 69 *Ga.* 749; 48 W. Va. 539, s. c. 37 S. E. 532.  Plaintiff was estopped: 59 *Ga.* 171 (3); 95 *Ga.* 97; 17 Am. Dec. 710; 10 Am. & Eng. Enc. L. (2d ed.) 436; 3 Washb. Real Prop. 79.  Damages not irreparable: Civil Code, §4916; 10 *Ga.* 576; 11 *Ga.* 250; 39 *Ga.* 134; 58 *Ga.* 268; 13 Am. R. 629.  The alleged trespass was complete before the petition and the restraining order were served on the defendant: 20 *Ga.* 126; 75 *Ga.* 829; 112 *Ga.* 528; Id. 876.

*W. K. Miller* and *J. R. Lamar*, contra.  Where a deed is made to property which adjoins an alley, the grant of the use of the alley is conveyed as appurtenant to the lots: 64 *Ga.* 423; 95 *Ga.* 101; 69 *Ga.* 458; 66 *Ga.* 712; 81 *Ga.* 724; 83 *Ga.* 789; 59 *Ga.* 450;

10 Am. & Eng. Enc. L. (2d ed.) 419. Terms of deed as to use of the alley control; and presumption that open alley was one of the inducements for the vendee to buy: 45 *Ga.* 352, 353; 59 *Ga.* 450; 69 *Ga.* 458. It can not be closed or obstructed: 64 *Ga.* 425; 66 *Ga.* 712; 81 *Ga.* 724. Even if the other party is not damaged: 83 *Ga.* 789; 59 *Ga.* 450. Even in cases of adjoining lots, an easement of light and air will be maintained and enforced in equity, when reasonably necessary for the enjoyment of the estate granted; absolute necessity not required: Civil Code, § 3036; 6 Am. R. 300; 10 Am. & Eng. Enc. L. (2d ed.) 424; 58 *Ga.* 269; 69 *Ga.* 219; 134 N. Y. 385; Wood, Nuis. § 154. Irreparable damage: 105 *Ga.* 324, 336, 337, 338; 112 *Ga.* 877. Implied grant of easement of light, air, and drainage: Civil Code, §§ 3881, 3590, 3046; 70 *Ga.* 49; 10 Am. & Eng. Enc. L. (2d ed.) 420, 427. Unlawful interference with rights above or below surface gives right of action; particularly when it is a nuisance endamaging the property: Civil Code, §§ 3863, 3590, 3068; 95 *Ga.* 101. Solvency not prevent injunction: 112 *Ga.* 877, 881; 64 *Ga.* 423; 71 *Ga.* 563; 74 *Ga.* 570; 80 *Ga.* 207; 88 *Ga.* 100; 92 *Ga.* 207. Ordinary damages no remedy: 64 *Ga.* 423; 66 *Ga.* 712; 71 *Ga.* 563; 112 *Ga.* 880 – 2. The court was right to compel defendant to restore status: 54 *Ga.* 257; 36 *Ga.* 346; 53 *Ga.* 200; 56 *Ga.* 99; 61 *Ga.* 164; 68 *Ga.* 189; 76 *Ga.* 830; 80 *Ga.* 655; 88 *Ga.* 378; 98 *Ga.* 722, 725 ; 72 Fed. R. 1000; 2 High, Inj. §§ 1421, 1422, 1423, 1427, 1438, 1446; 10 Enc. Pl. & Pr. 1027, 1101; Civil Code, §§ 4047, par. 3, 4853. Plaintiff not estopped: Civil Code, § 5151.

COBB, J. Catharine E. B. Harker, made her application for an injunction against Eugene E. Murphey, to restrain him from closing up an alley in the city of Augusta, and from erecting a permanent structure therein which would impede the free use of the alley. The plaintiff sued in the capacity of executrix of the last will of her husband, Edward W. Harker, and as life-tenant in the property abutting upon the alley ; the life-estate, therein being created under the will of her husband. At the hearing an injunction was granted, and to this the defendant excepted.

1–3. It appears from the record that there was a twelve-foot alley between the lot referred to in the plaintiff's petition and a lot owned by the defendant, and that he was proceeding to erect a building upon his lot, a portion of which would be over the alley above

referred to, though the building would not prevent the alley from being used as a passageway, that portion of the building which was over the alley being constructed merely above the same, and such of it as was in the alley not absolutely destroying it as a passageway. The controlling question to be determined is, has the defendant such an interest in the alley that he can use any portion thereof for the purpose of erecting a building, notwithstanding the building may be so constructed that those who are entitled to use the alley as a passageway may still pass through the same ? Both parties derive title from the same source, Robert A. Reid being the common grantor of each. It appears that Reid was the owner of a parcel of land on the corner of Washington and Broad streets in the city of Augusta. This parcel of land was so located that it could be divided into three lots, two of them having a frontage upon Broad street and one of them having a frontage upon Washington street. On October 18, 1860, Reid conveyed to Henry Myers a lot fronting about 77 feet upon Broad street and running back 128 feet 4 inches, and which was described in the deed as being "bounded on the north by Broad street; south by an alley of unequal width extending to Washington street; east by a lot now or formerly owned by the estate of A. Simonette ; west by lot of the said Robert A. Reid." This deed conveyed to the grantee the perpetual right, in common with the grantor, his heirs and assigns, to use the alley referred to " for ingress and egress from and to Washington street, subject also to the privilege hereby reserved by the said Robert A. Reid to himself, his heirs, legal representatives, and assigns, of building over the part of said alley which is adjacent to his lots whenever he, or they, may deem it expedient, without diminishing the width of said alley, or interfering in any respect with the free use thereof as aforesaid by the said Henry Myers, and any person or persons claiming through or holding under him as tenants, or otherwise." On February 7, 1862, Reid conveyed to Edmund T. Murphey, who was the ancestor and predecessor in title of the defendant, that portion of his lot on the corner of Washington and Broad streets lying west of the lot conveyed to Myers, and having a frontage on Broad street of 55 feet, more or less, and a depth of 128 feet 4 inches, more or less ; and described in the deed as bounded on the north by Broad street, "south by alley of unequal width, but being 12 feet wide so far as the lot of land hereby

conveyed is bounded by it on the south," and extending to Washington street of the same width; east by lot owned by Henry Myers; and west by Washington street.   The deed also conveyed "the perpetual right, in common with the said Myers, his heirs and assigns, to use said alley through its whole extent in length and breadth for ingress and egress from and to Washington street, as by reference to a deed from Robert A. Reid to the said Myers, dated October 1, 1860, will more fully appear."   On August 15, 1862, Reid conveyed to Samuel Lecky, trustee, all of the remainder of the lot which had not been previously conveyed to Myers and Murphey; this deed describing the land conveyed as bounded on the north by Edmund T. Murphey's lot; south by the lot of Emanuel H. Nehr; east by the lot of Alexander Martin, deceased; and west by Washington street.   The deed conveyed to the grantee the land described, together "with the appurtenances."   The following diagram shows the location of the lots above described:

O—Windows up stairs
‖—Doors
X—Windows down stairs

Brick Building
Lot No. 3
Now
Harker Lot

ALLEY

WASHINGTON STREET.

Lot No. 1
R. A. Reid
sold to
Myers

Lot No. 2
R. A. Reid
sold to
Murphey

BROAD STREET.

Lot No. 1, the first lot sold by Reid, will be hereafter referred to as the Myers lot, and the conveyance to him will be called the Myers deed. Lot No. 2, the second lot conveyed, will be hereafter referred to as the Murphey lot, and the conveyance to Murphey as the Murphey deed. Edward W. Harker, by successive conveyances from Lecky, trustee, and his successors and assigns, acquired title to the lot described in the deed to Lecky, trustee, and this lot will be hereinafter referred to as the Harker lot and the deed to Lecky as the Lecky deed. Reid having been the owner of the entire parcel of land embraced in the three deeds above referred to, the rights of the parties to the present case in the alley in controversy are to be determined by a proper construction of the stipulations in the various deeds. When Reid sold to Myers he was the owner, not only of the fee in the lot sold, but also of the fee in the alley; and he could determine exactly what interest his vendee should have in the alley. The deed makes the alley the southern boundary of the lot sold to Myers, and therefore title to the alley did not pass to Myers under the conveyance of the lot, and Myers and his assigns were, under the terms of the deed, given the joint right with Reid and his assigns to use the alley "for ingress and egress from and to Washington street," Reid expressly reserving to himself and his heirs and assigns the right to build over the alley, whenever he or they saw proper, so long as any structure which might be placed in the alley was not of a character to interfere with the free use of the same by Myers and his assigns. Under the terms of this deed the only interest in the alley that passed out of Reid into Myers was an easement, under which Myers and his assigns could use the alley perpetually as a passageway from and to Washington street. Reid and those claiming under him have a perfect right to use the alley for any purpose that they see proper, so long as it does not interfere with the right of ingress and egress from and to Washington street on the part of Myers and his assigns. When Reid sold the lot adjoining the Myers lot to Murphey, he was the owner of the fee in the lot, and he was still the owner of the fee in the alley, qualified only by the right of ingress and egress which had been conveyed to Myers and his assigns. Reid could have sold to Murphey not only the lot but also the alley and every right connected with it, except the right to close it up and destroy the easement theretofore conveyed to Myers and his as-

signs. That Reid conveyed to Murphey all interest in the lot from the alley on the south to Broad street on the north is not questioned; but the principal question presented for adjudication in the present case is, what interest in the alley did Murphey acquire under the deed which Reid made to him to the lot? The Murphey deed describes the lot conveyed as being bounded on the south by the alley just referred to. The alley being the southern boundary of the lot under this description, no interest in the alley would pass to Murphey under the description of the lot conveyed.

But the deed conveyed to Murphey the perpetual right, in common with Myers and his heirs and assigns, to use the alley "for ingress and egress from and to Washington street;" and expressly referred to the Myers deed as the source from which could be derived information as to what was the interest in the alley thus conveyed. Under the terms of the Murphey deed just referred to, just as under the terms of the Myers deed, the grantee obtained title to the lot conveyed, and no other interest in the alley which bounded it on one side than the right of ingress and egress from and to Washington street, and the reference in the Murphey deed to the Myers deed makes the reservation in the Myers deed in reference to building over the alley a part and parcel of the Murphey deed. The only conveyance under which Murphey claims the right to derive title to the alley or any right to use the same being the conveyance to him above referred to as the Murphey deed, and this conveyance not having that effect, and the rights of Murphey being limited by the stipulations in the Myers deed, Murphey had no right to erect any structure, permanent or temporary, in or above the alley, and the erection of such a structure would be an invasion of the legal rights of the owner of the alley. The Lecky deed, under which the plaintiff claims, does not expressly refer to the alley, but it conveys a lot which by description embraces all of the parcel of land formerly owned by Reid, the grantor, except that which had been theretofore · conveyed to Murphey and Myers, and expressly says that the lot conveyed is "bounded on the north by Edmund T. Murphey's lot." As the southern boundary of the Murphey lot is on the north side of the alley, the conveyance to Lecky embraces the alley, and of course the grantee in that deed and his successors and assigns would acquire title to the alley, subject only to the right of those claiming under Myers and Murphey

to use the alley as a means of ingress and egress from and to Washington street. But even if the terms of the Lecky deed are not sufficient to embrace the alley as a part of the description of the lot conveyed, it is a conveyance of the lot, "with the appurtenances;" and the right to have the free and unobstructed use of the alley would pass to the grantee and his assigns as appurtenant to the lot. See *Taylor* v. *Dyches*, 69 *Ga.* 455. Whether the description in the Lecky deed would pass the fee in the alley, or whether any interest in the alley which still remained in Reid and his heirs and which would pass to Lecky and his assigns was merely an easement in the alley, the present owners of the property conveyed by the Lecky deed are entitled to the free and unobstructed use and enjoyment of the alley, and anything which interferes with this use, or impairs the value of their property abutting upon the alley, is an invasion of their legal rights. They have, in either event, such an interest in the alley that anything erected therein, which would create a nuisance or damage their property, by one who was a mere trespasser without any legal right to erect the obstruction, whether it be permanent or temporary, would give them a right of action against such wrong-doer.

4. Having reached the conclusion that the defendant had no interest whatever in the alley, except the right to use the same as a passageway, and that the plaintiff has such an interest in the alley that she would have a right of action against the defendant for whatever damage she sustained by reason of the erection by the defendant of a structure in or over the alley, it is to be determined whether the plaintiff has made such a case by her pleadings and evidence as would authorize the court to grant an injunction to prevent the defendant from completing the structure which he had commenced to erect. Upon the lot of the plaintiff was a two-story brick house, and four windows in the house opened on the alley, two on the first floor and two on the second. The building was erected upon the line of the alley, and attached to the building was an open gutter which extended six inches over the alley, such gutter being used to carry off the rain water falling upon the building. It was alleged that the plaintiff and her predecessors in title had been in the uninterrupted enjoyment of the right to use the alley for the purpose of carrying off the rain water through the gutter above referred to, and of the right to have ventilation and light through the windows open-

ing upon the alley, for more than thirty years; and that the structure which the defendant was proceeding to erect would close up the windows on the second floor and would destroy the gutter. It was also alleged that the erection of this structure in the alley would work irreparable injury to the property of the plaintiff, practically destroying her right to use the same for the purpose for which it was intended. All of these allegations as to the character and extent of the damage were denied by the answer. Without going into detail in reference to the evidence on this point, it is sufficient to say that it was conflicting. At the request of the parties the judge viewed the premises himself, in order to determine this question, and, after hearing evidence and viewing the premises, he came to the conclusion that the plaintiff would be irreparably damaged by the erection of the structure; and we can not say that this finding is unsupported by the evidence, even if it did not have in its favor the actual view of the premises by the presiding judge himself. Where the consequences of a nuisance about to be erected will be irreparable in damages, and such consequences are not merely possible but to a reasonable degree certain, a court of equity will interfere by injunction to arrest the nuisance before it is completed. Civil Code, § 3863. See also *Cohen* v. *Bank*, 81 *Ga.* 723; *Swift* v. *Coker*, 83 *Ga.* 789.

5, 6. It appears from the record that on May 29, 1901, the judge granted an order restraining the defendant from changing the status of the property, from closing the windows or removing the gutter, and from closing the alley, until the further order of the court. This order was filed in the clerk's office on May 30, but was not served by the sheriff upon the defendant until 4:30 o'clock p. m. on the 31st of May. It appears that the order was filed in the clerk's office at 10 o'clock a. m. on May 30, and that immediately thereafter counsel for the plaintiff went to the building and notified the foreman in charge of the work that the order had been granted restraining Murphey from proceeding with the building, and that later in the same day counsel for defendant was notified that the restraining order had been granted, and was told that this notice was given so that Murphey would know of the existence of the order, and would therefore make no change in the status of the building. On the morning of the 31st a large force of hands went to work upon the structure being erected by the defendant, and, notwith-

standing it was then raining, the work of constructing the wall and laying brick continued during a portion of the day. The defendant admitted at the hearing that he had seen a notice, in the evening paper on the 30th of May, that the restraining order had been granted and was filed, and that on the same evening his attorney had informed him that he (the attorney) had been told that a restraining order had been granted, though neither he nor his attorney had then seen the petition for injunction or the restraining order. The judge granted an injunction in accordance with the prayers of the petition, restraining the defendant from completing the structure, and passed an order that the defendant immediately restore the property to the condition in which it was at the time of the filing of the petition, by removing and taking down so much of the obstruction in the alley as was placed there after the petition was filed, and that, in default of so doing within three days, the sheriff proceed to carry out this order and restore the status as it existed at the time the petition was filed. The defendant not only excepts to the granting of the injunction, but excepts to the order requiring him to restore the status as it existed at the time the petition was filed. It is insisted that this order was erroneous, for the reason that an injunction or restraining order is not operative until the same has been regularly and legally served upon the person sought to be enjoined or restrained, and that there can be no violation of a restraining order or injunction until after the party sought to be restrained or enjoined has been personally served by the sheriff, and that no notice to the party or his attorney, other than personal service by the sheriff, will authorize any proceeding against the party for a violation of the injunction or restraining order. If a person be informed that an injunction or restraining order has been issued against him, he is bound to obey it from the time he receives the notice. It is immaterial from what source he derives the information, so long as it is from a source which is entitled to credit; and if he receives the notice from such a source and also receives information which clearly and plainly indicates what is the act from which he must abstain, he is bound to obey the order of the court, whether he is ever served with the writ or not, and a refusal or failure to comply with the order of the court, whatever it may be, under such circumstances, is as much a contempt as if the defendant has been personally served by the sheriff with the writ. This

proposition is too well settled now either to require extended discussion or to admit of serious question. See 10 Enc. P. & P. 1027, 1101; 2 High, Inj. (3d ed.) §§ 1421, 1424.

In *Lewis* v. *Singleton*, 61 *Ga.* 164, Judge Warner says : "It was not necessary that the defendant should have been *officially* apprised of the receiver's appointment; if he had actual knowledge of the granting of the order requiring him to turn over the goods to the receiver, that was sufficient." See also *Drakeford* v. *Adams*, 98 *Ga.* 722. If a defendant, after notice that an injunction or restraining order has been granted, does an act in violation of the injunction or restraining order, and thus changes the status of the property involved in the litigation, the judge has authority, either at the hearing for an injunction, or upon an application for an attachment for contempt, to require the defendant to restore the status as it was at the time he first received notice of the fact that the injunction was granted. See *Byne* v. *Byne*, 54 *Ga.* 257 ; *Thweatt* v. *Gammell*, 56 *Ga.* 98 ; *Wimpy* v. *Phinizy*, 68 *Ga.* 188 ; *Robinson* v. *Woodmansee*, 76 *Ga.* 830 ; *Ryan* v. *Kingsbery*, 88 *Ga.* 379 ; *Baker* v. *Weaver*, 104 *Ga.* 228. In the present case the judge had authority to require the defendant to restore the status as it existed at the time he or those representing him first had knowledge that the restraining order was granted. The defendant admitted that he had notice of the character of the restraining order on the evening of May 30 ; and the judge could have found from the testimony that the foreman in charge of the work, who was the representative of the defendant, had notice that the restraining order was granted immediately after the same was filed in the clerk's office. Under such circumstances it was not error for the judge to require the defendant to restore the status as it existed at the time that the petition was filed. Simply requiring the defendant to restore the status, under the circumstances of this case, was, to use the language of Mr. Justice Hall in *Robinson* v. *Woodmansee*, supra, "a mild use of the judge's discretion." The utter disregard of and contempt for the court's order, which was manifested by the defendant after he had actual notice that the restraining order had been granted and of the effect of the same, would have justified much more rigorous measures than the judge saw proper to employ, to impress upon the defendant as well as others the validity and binding force of an order of a judge of the superior courts re-

straining one from doing a particular act, as well as the respect due the courts and their officers, the chosen instrumentalities for the administration of the law of the land. We see nothing in the order of the judge in regard to this matter of which the defendant should or ought to complain.

7. It is contended that the court erred in granting an injunction, for the reason that equity will not interfere to restrain a trespass when the plaintiff's title is not clear, nor unless his title is undisputed or has been settled by legal adjudication. The code provides that "Equity will not interfere by injunction to restrain waste when petitioner's title is not clear. Such relief is granted only when the title is free from dispute." Civil Code, § 4917. This provision of law is taken from a section in Mr. High's work on Injunctions, which is quoted in the case of *Nethery* v. *Payne*, 71 *Ga.* 374. When the peculiar facts of that case are considered, it will be seen that what was really decided was that where, as against the defendant, the plaintiff had no title, and the defendant was in possession under an apparently good title, it was error to enjoin the defendant at the instance of the plaintiff from exercising ordinary and usual acts of ownership upon the property. In the case of *Silva* v. *Rankin*, 80 *Ga.* 79, it was held that where it appeared at the hearing that the complainant had title to the property, and that the defendant had no title, the claim of title made by him being without foundation, and was for this reason a mere trespasser, and was insolvent, an injunction was properly granted to restrain the defendant from mining ore upon the land. In the opinion the present Chief Justice distinguishes *Nethery* v. *Payne*, by stating that in that case the record showed that the complainant had no title to the land in dispute. In *Flannery* v. *Hightower*, 97 *Ga.* 602, Mr. Justice Atkinson, in referring to the rule laid down in *Nethery* v. *Payne*, which is now embodied in the code, said : "This rule is a simple recognition of the general principle, that one is not entitled to invoke the extraordinary powers of a court of equity, unless he can establish, in a manner satisfactory to the law, the fact that he will suffer an irreparable injury in his estate. Unless the estate be his he can suffer no injury, and unless the title be in him there is no estate ; and hence, in the absence of title to the property upon which the trespass is about to be committed, the courts can not extend to him any aid, and will not, at his suit, interfere to inquire whether

another who is in possession and enjoyment of the estate be rightfully so or not." It would seem to follow from this reasoning, that if the plaintiff shows that the premises concerning which the controversy arose are a portion of his estate, and that he would be irreparably damaged, equity would interfere in his behalf to restrain the defendant from erecting a nuisance upon the property or committing a trespass thereon, when the defendant fails to show any fact which would impeach or break down the title set up by the plaintiff.

In *Moore* v. *Ferrell*, 1 *Ga.* 7, it was held that equity would interfere to restrain a trespass where the damages would be irreparable, although the title of the plaintiff might be questioned by the answer, but where the title is denied the courts would look more closely to the character of the trespass. In the opinion Judge Nisbet says: " It is, however, contended by counsel for the defendant in error, that granting to a court of chancery the right to enjoin trespasses in cases of irreparable injury, yet the interference of that court is limited to cases where the *title* of the complainant is not questioned by the answer, and inasmuch as this answer sets up title in the defendants, the injunction was rightfully dissolved. Where injunctions have been granted to stay *waste*, as before stated, the cases have been founded on privity of title; and in such cases no question as to title could be made. The distinction, so far as the jurisdiction of chancery is concerned, between waste and trespass, has been broken down. Now injunctions will be granted against waste and trespass (6 John. C. Rep. 497), but against trespass in the cases before designated, and in all such cases, whether the title be brought in issue or not. It seems, however, that where the complainant's title is denied, the courts will look more closely to the character of the trespass." In *Field* v. *Howell*, 6 *Ga.* 426, Judge Nisbet, in referring to the case of *Moore* v. *Ferrell*, thus states the conclusion reached in that case: " When the defendant sets up a title to the property, adverse to that of the complainant, in a proper case made, it was there held that a court of chancery would not undertake to determine the title, but would lay hold of the property, in the exercise of a preventive power appertaining to that jurisdiction, and by injunction protect it until the law tribunal should determine the title." See also, in this connection, *Powers* v. *Heery, R. M. Charl.* 523; *Johnson* v. *Hall*, 83 *Ga.* 281; *Camp* v. *Dixon*, 112 *Ga.* 877—8. In the present case, whether we treat

the plaintiff as the owner in fee of the alley, or as simply the owner of adjoining property, with ownership of the alley as appurtenant thereto, she has such title in the alley as would authorize her to enjoin the erection of a nuisance or the committing of a trespass therein, the consequences of which would be irreparable damage to her property, when the nuisance is about to be erected or the trespass committed by one in the position of the defendant, who has no interest whatever in the alley, except a mere right to use it as a means of ingress and egress from and to Washington street. While the defendant in his answer sets up title to the alley, the deed offered in support of this claim of title shows that he has no title whatever in the alley; and under such circumstances it was not only within the power, but it was the duty of the judge to issue an injunction to restrain the erection of the structure therein, when he was satisfied that its erection would result in irreparable damage to the plaintiff.    Even if the claim of title set up by the defendant is of such a character as to question the title of the plaintiff, the injunction was still properly granted; or if the answer of the defendant be considered as a denial of the plaintiff's title, when the character of the trespass or the nuisance which the evidence discloses is considered, still the injunction was properly granted. In any view of the case there was no error in restraining the defendant from completing the structure in the alley until all the questions at issue between the parties could be settled at the final hearing.

8. The foregoing discussion disposes of all questions involved in the present case which require any extended notice.    Complaint was made that the court erred in allowing an amendment to the petition, upon the ground that as to certain allegations it contained a new cause of action, that as to others it referred to matters which had occurred since the filing of the petition, and that as to still other allegations it was a mere reply by the plaintiff to the answer of the defendant.    In reference to the allegations which are alleged to set forth a new cause of action, it is sufficient to say that they are merely an amplification of the averments in the original petition in reference to the title of the plaintiff, and are in no sense a new cause of action.    Those allegations referring to matters occurring since the filing of the petition call the attention of the court to the fact that the defendant, after he had had notice of the granting of

the restraining order but before he had been served by the sheriff with a copy of the petition and writ, proceeded with a large force of hands to continue the erection of the structure in the alley for the purpose, as alleged, of wilfully evading, if not wilfully violating, the order of the judge.   It was not only the right, but the duty, of the plaintiff to call the attention of the judge to this fact, and there was no more appropriate method of bringing this fact to his attention than by filing an amendment in the nature of a supplemental petition.   In certain cases the court can compel a plaintiff to reply to the defendant's answer by appropriate written pleading.   Civil Code, § 5050.   We know of no good reason which would prevent a plaintiff from voluntarily making such reply in any case.   In any event, if he sees fit to make the reply, we do not see that the defendant has any right to complain, provided the reply thus made refers to matters which could be brought into the case by appropriate evidence in rebuttal of the allegations in the defendant's answer.   There was no objection to what was contained in that part of the amendment, but the objection was that the defendant had no right to file an amendment which was simply a reply to the defendant's answer.

The judgment under review is said to be erroneous, for the reason that the judge at an interlocutory hearing has no right to make a decree settling the question of title in a case like the present. A sufficient reply to this contention is that the order of the judge is not a decree settling the question of title.   It is the duty of the judge at an interlocutory hearing to inquire into the question of title, in order to determine whether it is appropriate to interfere by granting an interlocutory injunction, and to this extent only he settles the question of title.   This does not prevent the defendant at the final hearing from offering additional facts throwing light upon the question of title, if he can do so, but upon the facts as they appear before the judge at the interlocutory hearing he must determine whether the plaintiff has such a title or such an interest in the property as would authorize the granting of an interlocutory injunction.   The order granting an injunction amounts to a decision to this effect, but to nothing more.   If the judgment granting an injunction is based upon the decision of a question of law determining that the plaintiff has, under the facts proved, such an interest or such a title in the property as to authorize the issuing

of the writ, and that judgment is affirmed by this court, then if at the final hearing the same facts appear as appeared at the interlocutory hearing, and no other, the judgment of the judge on the question of title concludes the parties. But if the facts at the final hearing are different from those that appeared at the interlocutory hearing, the judgment is not conclusive. See *City of Atlanta* v. *Church*, 83 *Ga.* 448; *Ingram* v. *Trustees*, 102 *Ga.* 226.

It was claimed that under the evidence the conduct of the plaintiff had been such that she was estopped from interfering with the defendant in the erection of the structure in the alley, and that the defendant and his predecessors in title had exercised such acts of ownership in the alley as to give him a prescriptive title thereto. As to these matters, as well as to all other questions of fact arising in the case, it is sufficient to say that the evidence was of such a character as to authorize a finding by the judge in favor of the plaintiff's contention. On all questions of law determined by the judge his conclusions were, in our opinion, correct. On all questions of fact there was ample evidence to sustain his findings. The judgment rendered, requiring the property to be restored to the condition in which it was at the time of the filing of the petition, and enjoining the defendant from disturbing the status as thus restored until the final hearing of the case, will not be interfered with.

*Judgment on main bill of exceptions affirmed; cross-bill dismissed. All the Justices concurring, except Little and Lewis, JJ., absent.*