JONES *et al. v.* VAN WINKLE GIN & MACHINE WORKS.

1. It is unlawful for any person or association of persons to interfere with the business of another by means of force, menaces or intimidation, so as to prevent others from entering into or remaining in the employment of his service.
2. An injunction may issue in a proper case, to restrain persons from attempting, by threats, violence or intimidation, or other unlawful means, to prevent any person from engaging in, remaining in, or performing the business, labor, or duties of any lawful enterprise or occupation, although the acts sought to be restrained, if committed, constitute a crime.
3. Where workmen quit the service of their employer, and, as a means of inducing him to accede to their demands, establish pickets at or near the approaches of his premises for the purpose of inducing others from remaining in or entering into his employment, they and their confederates will be enjoined from the keeping of patrols, when such patrols resort to intimidation or any manner of coercion to prevent others from entering into or remaining in the service of their late employer, to the irreparable damage of his business.
4. Equity will not enjoin employees who have quit the service of their employer from attempting by proper argument to persuade others from taking their places, so long as they do not resort to force or intimidation, or obstruct the public thoroughfares.

Submitted November 22, 1907.—Decided August 18, 1908.

Injunction. Before Judge Pendleton. Fulton superior court. May 30, 1907.

*James L. Mayson* and *Reuben R. Arnold,* for plaintiffs in error.
*Ellis, Wimbish & Ellis* and *Peeples & Jordan,* contra.

EVANS, P. J. The Van Winkle Gin and Machine Works, a corporation, brought this action against the Atlanta Lodge Number 1 of the International Association of Machinists, an unincorporated body, and certain members thereof, who had lately been in the

employment of the plaintiff, but who were on a strike, to enjoin them from picketing, intimidating, and otherwise interfering with the plaintiff's employees and business. The defendants showed cause against the grant of an injunction, both by demurrer and answer. After hearing evidence the defendants were "enjoined from placing themselves, their agents or confederates, near the approaches to the petitioner's premises described in the petition and adjoining thereto, to induce persons working for petitioner not to work for it, and persons seeking employment by petitioner not to enter petitioner's employment, by threats of violence, intimidation, or persuasion, until the further order of the court." Exception is taken to the judgment in its entirety, and specially to so much thereof as forbids the defendants from placing themselves in or near the premises of the plaintiff for the purpose of persuading persons not to enter the plaintiff's employment, or to quit the same, so long as the entrances to the plaintiff's premises were not obstructed, and so long as violence, force, and intimidation were not used. The points raised by the demurrer were not argued in the brief, but only the legality of the decree and the sufficiency of the evidence to support it.

The lawfulness or unlawfulness of "picketing" has been the subject-matter of discussion in a large number of cases in this country. In the absence of statutes, courts have drawn from the elemental principles of the common law certain standards by which this modern factor used by labor unions as a means of settling controversies between employer and employees must be regulated. Every individual has a natural right to pursue a lawful occupation, and to conduct his business according to his own plans and policies, where he does not offend the law, or unlawfully infringe upon the rights of others. It is the right of every person or corporation to hire and discharge men at pleasure, subject to liability for damages for breach of contract; and every man has the right to work for another or to quit his service at his pleasure, subject to the same liability. But no person or association of persons has the right to interfere with the business of another by means of force, menaces, or intimidation, so as to prevent others from entering into or remaining in the employment of his service. In California it was held that a merchant is entitled to an injunction against the maintaining in front of his place of business, by a labor union,

of pickets bearing placards which tend to intimidate his employees and patrons, with intent to do so, for the purpose of compelling him to pay the prices fixed by the union to his union employees. Golberg *v.* Stablemen's Union, 149 Cal. 429 (8 L. R. A. (N. S.) 460, 117 Am. St. R. 145, 86 Pac. 806). In Am. Steel & Wire Co. *v.* Wire Drawers & Die Makers Unions, 90 Fed. 608, it appeared that the unions massed large bodies around the premises in which a strike was in progress; and the defendants were restrained from collecting in and about the approaches to the complainant's mills for the purpose of picketing, or patrolling or guarding the streets, approaches, and gates, for the purpose of intimidating, threatening, or coercing any of the employees, or any person seeking the employment of complainant. Other cases similar in principle might be added, but these are sufficient to illustrate our point, which is that when strikers patrol the streets and approaches of the premises where the strike is in progress, and their number is so great, or their conduct is such, as to intimidate and coerce the employees into quitting their employment, or others from seeking employment, they are guilty of unlawful acts, and will be enjoined from a continuance of them. Sometimes the number of strikers engaged in the patrol may be so great that those intended to be affected by the demonstration will be intimidated by the number of the strikers or their sympathizers, without special overt acts. The courts have repeatedly held that the assembling of strikers around the establishment of the employer in such numbers as will serve as a menace to those employed, or the keeping of patrols in front of or about the premises of the employer, accompanied by violence or any manner of coercion to prevent others from entering into or remaining in his service, will be enjoined. 24 Cyc. 835, and the numerous cases cited in the note to the text.

While there is some reference in the evidence to the pickets of the strikers having spoken to some employees, the pleadings and evidence do not make a distinct issue of a combination to injure one in his business or trade by inducing by persuasion his employees to violate existing contracts of employment, to the irreparable damage of the employer, so as to require a discussion of such a claim as a basis for injunction, or a decision in regard to it.

It is a penal offense in this State to attempt by threats, violence, intimidation, or other unlawful means, to prevent any person from

engaging in any lawful employment, or to hinder, by such means, any person from employing laborers. The Penal Code sections are as follows: "§123. If any person or persons, by threats, violence, intimidation or other unlawful means, shall prevent or attempt to prevent any person or persons in this State from engaging in, remaining in, or performing the business, labor, or duties of any lawful employment or occupation, such offender or offenders shall be guilty of a misdemeanor. §124. If any person or persons, singly or together, or in combination, shall conspire to prevent or · attempt to prevent any person or persons, by threats, violence, or intimidation, from engaging in, remaining in, or performing the business, labor, or duties of any lawful employment or occupation, such offender or offenders shall be guilty of a misdemeanor. §125. If any person or persons, singly or by conspiring together, shall hinder any person or persons who desire to labor from so doing, or hinder any person, by threats, violence or intimidation, from being employed as a laborer or employee, such offender shall be guilty of a misdemeanor. §126. If any person or persons, by threats, violence, intimidation, or other unlawful means, shall hinder the owner, manager, or proprietor for the time being from · controlling, using, operating, or working any property in any lawful occupation, or shall by such means hinder such person from hiring or employing laborers or employees, such offender or offenders shall be guilty of a misdemeanor." But a court of equity is not ousted from the exercise of its ·peculiar functions of preventing irreparable damage merely because, in exercising such functions, it may also prevent the commission of a crime. The court does not interfere to prevent the commission of crime, although that may incidentally result, but it exerts its force to prevent individual property from destruction, and ignores entirely the criminal feature of the act. And Mr. Pomeroy (6th Pom. Eq. Jur. 619) says, that "it is everywhere the rule, following the general principle in equity, that where there is ground for equitable interference, as, where an irreparable injury is threatened to property, the fact that the act is also a crime is not a reason for refusing an injunction." This principle was recognized and applied by this court in the case of an indictable nuisance. · *Mayor of Columbus* v. *Jaques,* 30 *Ga.* 506. So, it is no reply to the invocation of the equitable remedy

to prevent irreparable injury to property, that the acts which cause the damage may also be indictable.

As already said, members of a labor union, either individually or as an association, have no right by force, menace, or intimidation, to prevent others from working upon such terms as they are willing to accept, or to hinder by such means any person from employing laborers. In many cases it may be difficult to draw the line of demarcation between intimidation and inoffensive persuasion. In a New York case (Rogers *v.* Evarts, 17 N. Y. Supp. 264) it was said: "It may be impossible to lay down a general rule as to what surrounding circumstances will characterize persuasion and entreaty as intimidation. Each case must probably depend upon its own surroundings. But where evidence presents such a case as to convince the court that the employees are being induced to leave the employer, by operating upon their fears rather than upon their judgments or their sympathy, the court will be quick to lend its strong arm to his protection. Rights guaranteed by law will be enforced by the court, whether invoked by employer or employee." The very word "picket" is borrowed from the nomenclature of warfare, and is strongly suggestive of a hostile attitude towards the individual or corporation against whom the labor union has a grievance. To quote Mr. Eddy, "It is conceivable, however, that a picket entirely lawful might be established about a factory, but such a picket would go no further than interviews and lawful persuasion and inducement. The slightest evidence of threats, violence, or intimidation of any character ought to be sufficient to convince court and jury of the unlawful character of the picket, since the picket under the most favorable consideration means an interference between employer seeking employees, and men seeking employment." 1 Eddy on Combinations, §539. But the law does not forbid employees who have quit their employer from using legitimate argument to induce others to refrain from taking their places. The current of authority is that a court of equity will not enjoin employees who have quit the service of their employer from attempting to persuade, by proper argument, others from taking their places, so long as they do not resort to intimidation or obstruct the public thoroughfares. Everett Waddy Co. *v.* Richmond Typographical Union, 105 Va. 188 (53 S. E. 273, 5 L. R. A. (N. S.) 792) ; Master Builders Assn. *v.* Domascio, 16 Col. App. 25 (63 Pac.

782) ; Christensen *v.* Kellogg Switchboard & Supply Co., 110 Ill. App. 61; Cumberland Glass Mfg. Co. *v.* Glass Bottle Blowers Assn., 59 N. J. Eq. 49 (46 Atl. 208) ; Union Pac. R. Co. *v.* Ruef, 120 Fed. 124; Perkins *v.* Rogg, 11 Ohio Dec. 585; Nat. Pro. Assn. *v.* Cumming, 170 N. Y. 315 (63 N. E. 369, 58 L. R. A. 135, 88 Am. St. R. 648) ; Gray *v.* Building Trades Council, 91 Minn. 171 (97 N. W. 663, 63 L. R. A. 753, 103 Am. St. R. 477).

There was evidence before the judge that certain machinists in the employment of the E. Van Winkle Gin & Machine Works became dissatisfied and quit their employment. These machinists were members of Atlanta Lodge Number 1 of the International Association of Machinists. The appointed agent of the local lodge, acting for and in behalf of the strikers, demanded of the E. Van Winkle Gin & Machine Works that it adopt certain rules for the conduct of its business, which demand was refused. For the purpose of enforcing their demand, and to the end that their former employer might not engage men to supply their places, the strikers placed men at every approach to the plant of the plaintiff and the railway stations in the city of Atlanta. There were from four to twelve men doing "picket duty." These pickets accosted every stranger who evinced an intention to enter the manufacturing plant of the plaintiff, for the purpose of inducing him to abandon any intent to seek employment with the Van Winkle Works. One of the pickets suggested to a new man that "while living and doing well they had better stay out." At another time the pickets after endeavoring to induce a man seeking employment to desist, upon his seeming reluctance to yield to their entreaties, said to him: "God damn you, you will have to get out any way." On another occasion a man seeking employment approached an employee of the plaintiff and asked to be directed to the plaintiff's shops. This employee volunteered to guide the inquirer, when one of the strikers who was near by came up and asked the person seeking employment if he was a machinist, and upon being informed that he was a machinist looking for a job, the striker began to abuse the shop, saying it was a scab shop, and to curse the new men who had gone into the shops to take the places of the strikers, calling them "damned scabs." This man did not apply for a job. These, and similar threats, and the constant surveillance of the plant by the pickets caused other departments of the plaintiff's plant to shut

down for lack of machinists. At this juncture of affairs the defendants were restrained by a temporary order from interference with the plaintiff's business; and after the grant of the restraining order, according to the testimony of the superintendent, "everything has assumed a different attitude and a feeling of rest and confidence has taken place which did not exist while the premises were picketed." The quoted remarks of the strikers to the men who were seeking work were more than a peaceable and argumentative presentation of their grievance. The language implied a threat of harm, and the warning to stay out, if unheeded, might be attended with hurtful consequences. The language of these pickets was clearly intimidative, and intended to coerce compliance with their request not to work for the plaintiff; and there was no error in enjoining such conduct. The form of the injunction is perhaps too broad, in that the strikers are enjoined from using all form of persuasion. As we have pointed out, it was not unlawful for the strikers to use legitimate argument and moral suasion in presenting their case to those who offered to take their places, so long as it is neither coercive nor intimidating in character. In affirming the judgment, direction is given to so amend the decree as to make it accord with the opinion of the court in this particular.

*Judgment affirmed, with direction. All the Justices concur.*