ROBINSON *v.* BRYANT *et al.*

No. 10978. FEBRUARY 19, 1936.

*Sutherland, Tuttle & Brennan,* for plaintiff.

*J. C. Savage,* for defendants.

BELL, Justice. Where the plaintiff shows ground for the grant of an interlocutory injunction, but there is a material conflict in the evidence as to the existence of such ground, a judgment refusing an injunction will not be disturbed by this court; but in the present case the evidence presented no substantial issue, and demanded an injunction in the plaintiff's favor. It is a penal offense in this State to attempt by threats, violence, intimidation, or other unlawful means, to prevent any person from engaging in any lawful employment, or to hinder, by such means, any person from employing laborers. Such was the statement in *Jones* v. *Van Winkle Gin & Machine Works,* 131 *Ga.* 336, 338 (62 S. E. 236, 17 L. R. A. (N. S.) 848, 127 Am. St. R. 235), where sections 123, 124, 125, and 126 of the Penal Code of 1895 were quoted. See Code of 1933, §§ 66-9906 et seq. In the same case this court quoted from the decision in Rogers *v.* Evarts, 17 N. Y. Supp. 264, as follows: "Where evidence presents such a case as to convince the court that the employees are being induced to leave the employer, by operat-

ing upon their fears rather than upon their judgments or their sympathy, the court will be quick to lend its strong arm to his protection. Rights guaranteed by law will be enforced by the court, whether invoked by employer or employee." In *McMichael* v. *Atlanta Envelope Co.*, 151 *Ga.* 776 (108 S. E. 226, 26 A. L. R. 149), it was held: "Where employers, whose businesses require the employment of a number of workmen skilled in a particular trade, determine to operate their businesses on non-union bases and to that end adopt a policy not to employ members of the union, and do employ non-union workmen under a contract, terminable at will, providing that such employment shall immediately cease if said employees become members of the union, equity will protect by injunction such contractual status as against strangers and striking former employees, who, knowing such status, conspire to coerce the employers to abandon the policy of employing only non-union labor and to cause a breach of the aforesaid contractual relation, and who endeavor by threats, intimidation, and improper persuasion to deprive such non-union employees of the exercise of their own freedom of will, and thus induce them to violate their contracts of employment by joining the union, and thus force the unionizing of the plants or render it impossible to continue the operation of the business." Quoting from Barnes *v.* Typographical Union, 232 Ill. 431 (83 N. E. 943, 14 L. R. A. (N. S.) 1018, 13 Ann. Cas. 54), this court said: "Competition in business justifies action for the benefit of one of the competing parties which results in injury to the other, and a reason frequently given is that the general public benefits outweigh occasional individual losses. One who is seeking employment for himself may offer to work on any terms that he may choose, and the exercise of his legal right may result in the discharge of another laborer. . . If there is a combination to injure a person because he refuses to comply with some demand where he has a legal right to refuse, there is no way of classifying acts in furtherance of such purpose as competition." This court further said: "If striking employees do no more than to attempt, by 'proper argument,' to persuade others from taking their places, and do not resort to force and intimidation, a court of equity would not be authorized to interfere. We are equally sure that where such former employees attempt by improper argument to dissuade others from taking their places, and

do resort to force, coercion, or intimidation, it would equally be the duty of a court of equity, in a proper case, to interfere by injunction. 'It must be conceded that argument and persuasion are lawful if not directed to the accomplishment of an illegal and unlawful purpose. . . An act which is naturally innocent, when done with actual malice for the purpose of injuring another, and followed by such injury, is not excused because the act might be innocent under other conditions.' Barnes *v.* Typographical Union, supra, at page 436. The persuasion that the law permits in these circumstances is such as appeals to the judgment, reason, or sentiment, and leaves the mind free to act of its own volition. Where there is no such freedom of action, more than mere persuasion has been exercised, and it amounts to duress, intimidation, coercion, or other like influence." See also *Burgess* v. *Ga., Fla. & Ala. Ry. Co.,* 148 *Ga.* 415, 417 (96 S. E. 864, 865). In Berry *v.* Donovan, 188 Mass. 353 (74 N. E. 603, 5 L. R. A. (N. S.) 899, 108 Am. St. R. 499), the Supreme Judicial Court of Massachusetts discussed the question of fair competition as follows: "The only argument that we have heard in support of interference by labor unions in cases of this kind is that it is justifiable as a kind of competition. It 'is true that fair competition in business brings persons into rivalry, and often justifies action for one's self which interferes with proper action of another. Such action on both sides is the exercise by competing persons of equal conflicting rights. The principle appealed to would justify a member of the union, who was seeking employment for himself, in making an offer to serve on such terms as would result, and as he knew would result, in the discharge of the plaintiff by his employer, to make a place for the newcomer. Such an offer, for such a purpose, would be unobjectionable. It would be merely the exercise of a personal right, equal in importance to the plaintiff's right. But an interference by a combination of persons, to obtain the discharge of a workman because he refuses to comply with their wishes, for their advantage, in some matter in which he has a right to act independently, is not competition. In such a case the action taken by the combination is not in the regular course of their business as employees, either in the service in which they are engaged, or in an effort to obtain employment in other service. The result which they seek to obtain can not came directly from anything that they do within the regu-

lar line of their business as workers competing in the labor market. It can come only from action outside of the province of working-men, intended directly to injure another, for the purpose of compelling him to submit to their dictation. It is difficult to see how the object to be gained can come within the field of fair competition." While the present case did not directly involve competition, it did concern the propriety of the defendants' conduct in rela-tion to a citizen who had the legal right to pursue his employment, and the principles laid down in the cited cases are pertinent. It is true that the acts of the defendants were aimed directly at the plaintiff's employer, but, according to the evidence, they were intended to force the employer to break its contract with the plaintiff, which if done would deprive the plaintiff of his employment and means of livelihood. It may be said also that the plaintiff would not be damaged unless the activities of the defendants should result in such financial loss to the employer that the latter would be compelled to discharge him; but it appeared without dispute from the evidence that the defendants would persist in their efforts to ruin the business of the employer so long as it retained the plaintiff as an employee, and also that there was such reasonable probability of loss to the employer, with consequent discharge of the plaintiff, that an injunction to protect the plaintiff's right should have been issued; the means adopted by the defendants not being confined to mere appeals to reason and judgment, but amounting to duress and intimidation, in violation of the rights both of the plaintiff and of the employer.

*Judgment reversed. All the Justices concur.*