PATTEN *et al.* v. MILLER. GRIFFIN *et al.* v. MILLER.

Nos. 13235, 13247. APRIL 10, 1940.

*C. E. Jackson, Lamar Murdaugh, A. B. Conger, H. W. Nelson, A. N. Durden,* and *Copeland & Dukes,* for plaintiffs in error.

*James A. Branch, J. P. Knight, Franklin & Eberhardt,* and *H. C. Morgan, solicitor-general,* contra.

REID, Chief Justice. On December 4, 1939, on a petition of W. L. Miller for injunction, a temporary restraining order was granted against the defendants, Lawson L. Patten, Marvin S. Griffin, Clay Camp, and W. C. Grimes. So far as material, the order was as follows: "In the meantime and until the further order of the court, said defendants and each and all of them, their agents, servants, employees, and confederates, are hereby restrained from in any manner interfering with, obstructing, or molesting petitioner in the discharge of his duties as chairman of the State Highway Board and in the occupancy and use of the room in the State Highway building which has heretofore been assigned to and occupied by him in his official capacity, and from interfering with, obstructing, or in any way molesting possession and control of petitioner over the records, books, documents, and files of the State Highway Board, of which petitioner has the lawful custody and

154

possession, as prayed." On December 9, 1939, Miller presented to the judge a petition for a rule against Lawson L. Patten, Marvin S. Griffin, Woody Wilson, E. W. Longino, and R. C. Ulmer, to show cause why they should not be adjudged in contempt for violation of the restraining order. The defendants made their showing, but they were adjudged in contempt. A full statement of the entire controversy between the parties involving the chairmanship of the State Highway Board may be found in the decisions affirming the judgments granting injunction and mandamus. *Patten* v. *Miller*, ante, 105, 123. The correctness of the judgment finding the defendants in contempt is before this court in two bills of exceptions, one presented by Patten, case number 13247 and the other by the remaining defendants, case number 13235.

██ An analysis of the restraining order shows that the judge sought to protect the plaintiff from any interference, obstruction, or molestation by the defendants (1) in his discharge of the duties of chairman of the State Highway Board, (2) in his possession of the room which had been assigned to and occupied by him before his ejection, and (3) in his possession and control over the records, books, documents, and files of the board, of which he had the lawful possession. It is strongly contended that the order as a whole, and especially that part which purports to enjoin Patten from interfering with Miller in the performance of his duties as chairman of the State Highway Board, is so vague and indefinite that it fails to inform him "of what it is that he shall abstain from doing" (*Nance* v. *Daniel*, 183 *Ga.* 538, 189 S. E. 21), and is for that reason void. It is true that if the order is for any reason void on its face, the defendant can not be punished for a violation of its terms. *Allen* v. *Baker*, 188 *Ga.* 696 (4 S. E. 2d, 642), and cit. But we do not conclude that the order is subject to this attack. A chairmanship of the State Highway Board was first provided for in article 3, section 2, paragraph 3, of the act of 1919. This act reorganized and reconstituted the highway board which had been created by the act of 1916. Under the above-mentioned provision of the act of 1919, the chairmanship was to rotate between the three members of the board according to a designated plan therein set out. The act of 1919 was so amended by the act of 1921 (Ga. L. 1921, p. 199) as to provide, instead of the plan of rotation, that the Governor should designate one of the members as

chairman, subject to confirmation by the Senate. The chairman-ship of the highway board is not referred to in the act of 1925 (Ga. L. 1925, p. 208), and the amendment therein contained of article 3, section 3, of the act of 1919, "That said highway board shall be the executive and administrative head of the State Highway Department of Georgia, with full power and authority and in full control of the highway department and all road work and highway work within this State, as provided for under this act," is not so inconsistent with or repugnant to the provision of the act of 1919 as amended by the act of 1921, providing that one of the members of the board shall act as chairman thereof, as to work an implied repeal of the latter. The provision with respect to the chairman-ship was codified (Code of 1933, § 95-1603). In 1937 the General Assembly passed an act "to abolish the State Highway Board of Georgia, and to repeal Code §§ 95-1601 and 95-1602 of the Code of Georgia of 1933, said sections having reference to membership, appointment, and terms of the members" (Ga. L. 1937, p. 905), and on the same day passed "an act to create the State Highway Board of Georgia, providing for membership thereof, the appoint-ment and terms of office, to provide that said board shall perform all of the duties heretofore performed by the State Highway Board of Georgia; and for other purposes." Ga. L. 1937, p. 906. The repealing act, though it refers expressly to the Code, §§ 95-1601, 95-1602, makes no mention of § 95-1603, which, as above pointed out, embodies the provision providing for a chairman. Nothing contained in or to be drawn from the repealing act or the act re-establishing the State Highway Board is inconsistent with the provision for a chairmanship, and it seems clear that it was not the intention of the General Assembly to impliedly repeal that provision. Contemporaneous construction by the General Assembly sustains this view. In the act of 1937 (Ga. L. 1937, p. 322), creating the Department of Public Safety, it was provided that the department should be composed, among others, of "the Chairman of the Highway Board." An act approved February 16, 1938 (Ga. L., Ex. Sess. 1937-1938, p. 528), provided in substance that the members of the highway board should devote their full time to the performance of the duties of their office, and fixed the compensa-tion of the members of the board "other than the chairman thereof." It is also significant that the Governor appointed Miller chairman

of the State Highway Board on March 3, 1937, the day he approved the above-mentioned acts of 1937. "A construction of a statute by the legislature, as indicated by the language of other or subsequent enactments, is entitled to consideration as an aid in interpreting the statute, and is sometimes of great weight or highly persuasive, especially where such construction has been long continued." 59 C. J. 1033, 1034. We believe that the conclusion that there is a statutory chairman of the highway board, as provided for in the act of 1919, is inescapable.

We then come to the question of the duties of the chairman of the State Highway Board. The act of 1922 (Ga. L. 1922, p. 115), amending the act of 1919, provided in substance that the chairman should devote all of his time and attention to the discharge of the duties of his office; that he should represent the board and have "all the power and authority of same when not in session." This is the only express provision with reference to the duties of the chairman, and it is earnestly contended that it has been repealed by subsequent acts dealing with the highway board. In the view that we take of the case it is not necessary for us to determine the correctness of this contention. As already pointed out, the statutes provide for the position of chairman. The title alone necessarily carries with it the burden of duties not common to a mere membership on the board. The chairman of a board is the presiding parliamentary and administrative officer. His duties as such are manifold and well recognized, though perhaps not subject to any exact definition or enumeration. As between the various members of the board and the chairman, it is not, with respect to the performance of particular acts (except as to non-delegable duties of the chairman which might be prescribed by statute), a question of power and authority, but one of orderly administration. There may be in fact no duties which the chairman merely by virtue of his designation as such must or has the sole power and right to perform, but there are many matters which, if he be properly recognized by the other members of the board, should be referred to him for action; this in the interest of orderly and a proper administration by the board of its functions. The chairman is generally recognized as the proper officer to whom matters should be referred for action by the board, to make reports of its actions, to see that its orders are properly carried out, and many other ad-

ministrative details. The necessity for a chairman of a board such as the highway board is recognized on all sides, and it must assuredly follow that such an officer is called upon to perform duties not common to the other members. Our conclusion is that since the position of chairman of the State Highway Board is prescribed by statute, it is not to be taken as a mere empty title, but involves (independently of the act of 1922) the performance of many duties not common to the other members of the board. While Patten's membership on the board and his right to act as such was not questioned by the petition for injunction, we do not think that it was necessary that the order catalogue the duties that should be performed by the chairman as distinguished from the duties to be performed by a member, or to provide in detail what act or acts would be considered as an interference with Miller in the performance of the duties as chairman. It is not to be assumed that the defendant was entirely ignorant of those acts which are generally performed by the chairman, or that he could not have easily ascertained the duties that had theretofore been performed by Miller in his capacity as chairman. If he entertained any doubt as to what he might or might not do under the order he should have asked for a modification or a construction of its terms. *Warner* v. *Martin,* 124 *Ga.* 387 (52 S. E. 446, 4 Ann. Cas. 180). See, in connection with what is said above, *Patten* v. *Miller,* ante, 105, 123. Patten attacks the order as void for various other reasons, but all of them are decided adversly to him in the decision affirming the grant of an interlocutory injunction, already mentioned, and we do not deem it necessary to set them out here.

■ ■ ■ We therefore turn to a consideration of the question whether the evidence authorized the judge to find that the defendant had violated the restraining order. It appears that Miller was physically ejected from his office in the highway building by Griffin, Camp, and Grimes, on Saturday afternoon, December 2, 1939. The petition for injunction, naming these parties together with Patten, was presented to the judge and the restraining order granted on Monday, December 4. While Patten was not personally served with the petition and restraining order until about midnight on Wednesday, December 6, it appears from his own testimony that through the medium of the press he learned on Monday that a restraining order had been that day issued against him,

enjoining him and others from "interfering with Mr. Miller as Chairman of the Highway Board." In this connection the judge was authorized to conclude, from the defendant's testimony and the other evidence introduced, that he had ample notice of the restraining order. While it is held in some jurisdictions that a party against whom an injunction has been granted is not bound to obey it until he is actually served, this court has ruled that "One against whom an injunction has been granted is bound to obey the same as soon as he is informed of the fact that the injunction has been granted, although he may not have been then served with a copy of the writ." *Murphey* v. *Harker*, 115 *Ga.* 77 (5) (41 S. E. 585). If Patten "knew of the passage of the order in question and its contents, it is immaterial whence his information on the subject was derived. As to the knowledge he actually had, he is chargeable to the same extent as he would have been had he been duly served with a copy of the order in question." *Drakeford* v. *Adams*, 98 *Ga.* 722 (25 S. E. 833). See *Lewis* v. *Singleton*, 61 *Ga.* 164; *Anderson* v. *Hall*, 128 *Ga.* 525 (58 S. E. 43). Accordingly, since it appears that he learned on Monday that a restraining order had been granted, enjoining him from interfering with Miller as chairman of the highway board, it follows that he was chargeable with obedience to the order at least to the extent of the knowledge thus imparted to him, though he was not in fact served until the following Wednesday. It is appropriate to note in this connection that Patten testified that he called the sheriff of Lanier County on Monday night, and was told by him that Mr. Miller had the papers in Atlanta, and had said that he would not have them served. Griffin, another defendant, gave testimony that the rumor was current on Monday that Miller had abandoned his suit for an injunction. These facts were pertinent for the consideration of the judge in determining whether the defendant was guilty of a violation of the order after notice of its existence, but we can not say that as a matter of law they presented an absolute defense to the rule.

What was the defendant's conduct as shown by the evidence? It appears that on Monday morning he assumed the duties of member and chairman of the highway board. On that day he wrote letters to two employees of the highway department, advising them that executive budgetary approval of their names had been

withdrawn, and that their services were discontinued. On Wednesday, December 6, he addressed a similar letter to another employee of the highway department. All of the letters were signed "L. L. Patten, Chairman." It is not necessary to decide that the act of notifying employees of the highway board that executive budgetary approval of their names had been withdrawn and that their services were for this reason discontinued was within the domain of the chairman, and that its performance by Patten was of itself, under the attendant circumstances, a violation of the order. The fact is that in performing these acts he assumed to act in the capacity of chairman. This fact and the other circumstances shown by the evidence clearly authorized the judge to find that from Monday through Wednesday Patten held himself out and acted as chairman of the board, although he had notice of the restraining order on Monday. Counsel for Patten take the position that by this part of the order Patten "is not restrained and enjoined . . from acting or purporting to act as chairman thereof [the highway board], and certainly there is nothing in the order that purports to restrain him from holding himself out to the public as chairman of said board." We can not accept this interpretation of the order. It is manifest that there can be but one chairman of the board, and for Patten to assume to act as such interfered with Miller's right to so act. So long as Patten held himself out and assumed to act as chairman, Miller could not himself freely act as such. The manifest purpose of the restraining order was to temporarily settle the controversy between these parties as to who should be and act as chairman of the board. It is noteworthy that Patten himself did not take so narrow a view of the order; for he testified that after he was served (the time which he no doubt felt he was bound to obey the order) he did not assume to act as chairman. It is the spirit more than the letter of the injunction to which obedience is required. Rapalje on Contempts, § 40.

In cases of contempt the trial judge is vested with a discretion in determining whether his orders have been violated and how such infringements should be treated; and it has been said that this court will not disturb his judgment, unless it appears that he has abused his discretion. *Williams* v. *Lampkin,* 53 *Ga.* 200; *Thweatt* v. *Gammell,* 56 *Ga.* 98; *Warner* v. *Martin,* supra; *Ray* v. *Ellis,* 17 *Ga. App.* 423 (87 S. E. 603). He was the trior of the facts. Good

faith on the part of the defendant was not an absolute defense to the rule, but was together with all the other facts shown for consideration by the judge, in determining whether he would hold him in contempt and so punish him. Since we can not say that there was no evidence from which the judge could conclude that his order had been violated by the defendant, we have no power to disturb his judgment.

We think likewise that the judgment finding the other defendants in contempt must be affirmed. Substantially all of the points raised by these defendants are controlled by the rulings in *Patten* v. *Miller*, ante, 105, and in the decision above as to Patten. As to Griffin, who was a defendant in the injunction proceeding, the judge was authorized to find that on Thursday, December 7, after he had knowledge of the restraining order (though he had not been actually served at that time), he actively participated with Wilson, Longino, and Ulmer in physically ejecting Miller from his office for the second time. In the brief filed by counsel representing him it is not urged that he had no notice of the order before Thursday when he participated with the others in ejecting Miller from his office, nor is it contended that this act was not a violation of the terms of the order.

As to the other defendants, the point is made that since they were not parties to the injunction proceeding, they could not have been guilty of a contempt of court for a violation of the terms of the restraining order granted therein. There is no merit in this contention. If they had actual knowledge of the restraining order, they were subject to attachment for contempt for a violation of its terms. *Carson* v. *Ennis*, 146 *Ga.* 726 (92 S. E. 221, L. R. A. 1917E, 650); *Tomlin* v. *Rome Slove & Range Co.*, 183 *Ga.* 183 (187 S. E. 879). So far as these defendants are concerned the record presents no difficulty in this respect. It discloses without dispute that Miller and his brother not only notified them of the existence of the order and its contents, but that it was actually read to them, at least in their presence, immediately before they physically ejected him from his office. In so doing they unquestionably acted with knowledge and in open defiance of its terms.

*Judgments affirmed. All the Justices concur.*