PEDIGO *et al. v.* CELANESE CORPORATION OF AMERICA.

No. 16581. MAY 13, 1949. REHEARING DENIED JUNE 15, 1949.

397

*Poole, Pearce, & Hall, Wright & Scoggin, M. G. Hicks, C. T. Culbert, Isadore Katz,* and *David Jaffe,* for plaintiffs in error.

*Wright, Rogers, Magruder & Hoyt,* contra.

BELL, Justice. ■ By an act approved March 27, 1947, mass picketing and various other acts in relation to picketing were declared unlawful. Ga. L. 1947, p. 620. While the statute in section 6 provided that "any person who violates any of the provisions of this act shall be guilty of a misdemeanor," this did not prevent the plaintiff from invoking its other provisions as embodying rules of civil conduct. The penal clause as such is entirely immaterial in the present case. See *Donaldson* v. *Great Atlantic & Pacific Tea Co.,* 186 *Ga.* 870 (199 S. E. 213, 128 A. L. R. 456). Independently of statute, mass picketing may within itself, by reason of the large number of persons engaged therein, amount to intimidation. *Jones* v. *Van Winkle Gin &c. Wks.,* 131 *Ga.* 336 (3), 341 (62 S. E. 236); American Steel Foundries *v.* Tri-City Central Trades Council, 257 U. S. 184 (5), (8), 203, 206-207 (42 Sup. Ct. 72, 66 L. ed. 189, 27 A. L. R. 360); Goldfinger *v.* Feintuch, 276 N. Y. 281, 286 (11 N. E. 2d, 910 (4), 116 A. L. R. 477 (7); 31 Am. Jur. 954, § 244. The right to exercise freedom of speech by means of peaceful picketing carries with it no right to use force, violence, intimidation, harassment, or the like. *Robinson* v. *Bryant,* 181 *Ga.* 722 (184 S. E. 298); *Local Union No. 3871, United Steel Workers of America* v. *Fortner,* 202 *Ga.* 206 (5) (42 S. E. 2d, 734); *Burgess* v. *Georgia, Florida &c. Ry. Co.,* 148 *Ga.* 417 (96 S. E. 865); American Steel Foundries *v.* Tri-City Central Trades Council, 257 U. S. 184, 206 (supra).

The petition for citation did not show that freedom of speech or other constitutional right of the respondents would be infringed by requiring them to answer for the alleged contempts.

Whether or not the original suit for injunction may have been subject to demurrer for some reason, it undoubtedly contained enough to amend by, and the temporary restraining order, therefore, could not in any view be considered as a void order.. *Haynes* v. *Armour Fertilizer Works*, 146 *Ga.* 832 (92 S. E. 648). It is still outstanding, never having been reversed or set aside, and it was not subject to the attack made upon it by the respondents in their demurrer. "Upon the hearing of an attachment proceeding instituted for the purpose of punishing one who is alleged to have violated a restraining order granted by a court having competent jurisdiction of the person and subject-matter, but in the grant of which it proceeded erroneously, the validity of the court's action in originally granting such restraining order cannot be collaterally called in question. Such an order is binding upon the party restrained, until reversed, set aside, or modified by the court granting it, and a disobedience of the direction expressed in such order affords ground for an attachment as for a contempt." *Russell* v. *Mohr-Weil Lumber Co.*, 102 *Ga.* 563 (1) (29 S. E. 271). See also, in this connection, Code, § 55-201; *Dunn* v. *Harris*, 144 *Ga.* 157, 160 (86 S. E. 556); *Poss* v. *Norris*, 197 *Ga.* 513 (3), 517, 518 (29 S. E. 2d, 705); *Corley* v. *Crompton-Highland Mills*, 201 *Ga.* 333 (2), 337 (39 S. E. 2d, 861); *Pedigo* v. *Celanese Corporation of America*, ante, 371. The court did not err in overruling the demurrer.

■ During the trial, the respondents objected to a statement contained in an affidavit of one J. F. Caylor, tendered in evidence by the plaintiff. They also objected "to the entire line of testimony adduced by cross-examination of defendant Pedigo as respects the contents of and his knowledge of the act of Georgia, 1947, regarding mass picketing."

Both objections were overruled, and error is assigned on such rulings. Neither of these exceptions is sufficient to raise any question as to error. In neither instance does it appear what objection to the evidence was made at the time it was offered, and in the latter instance no evidence or testimony is sufficiently set forth, the expression, "the entire line of testimony" as to a stated subject, being too vague and indefinite.

■ Before considering whether the evidence was sufficient to authorize a finding that the respondents were guilty of contempt as charged, we will deal with the contention that, if these alleged contempts are to be treated as criminal contempts rather than civil, it would be necessary to apply the rule as to reasonable doubt as it is ordinarily stated and applied in criminal cases. Many courts have said that the reasonable-doubt rule should be applied in such a case; indeed, the great weight of authority has apparently taken that view. See, in this connection, Boyd *v.* U. S., 116 U. S. 616 (6 Sup. Ct. 524, 29 L. ed. 746); Gompers *v.* Buck's Stove & Range Co., 221 U. S. 418 (31 Sup. Ct. 492, 55 L. ed. 797); Michaelson *v.* U. S., 266 U. S. 42 (45 Sup. Ct. 18, 69 L. ed. 162); Lewis *v.* U. S., 330 U. S. 258 (67 Sup. Ct. 677, 91 L. ed. 884); 17 C. J. S. 113, § 84, d; 12 Am. Jur. 441, § 75; Annotations L. R. A. 1917B, 123-127, 49 A. L. R. 975. However that may be, we think that the question before us is one to be determined by the internal law of this State. Milk Wagon Drivers Union of Chicago, etc. *v.* Meadowmoor Dairies, 312 U. S. 287, 296 (61 Sup. Ct. 552, 85 L. ed. 837); 17 C. J. S. 72, § 62; 12 Am. Jur. 264-269, §§ 571-573. See also *Slaton* v. *Hall*, 168 *Ga.* 710 (148 S. E. 741, 73 A. L. R. 891).

There is no statute in Georgia relating specifically to this question. There is a statement in *Drakeford* v. *Adams*, 98 *Ga.* 722 (25 S. E. 833), that would tend to support the respondents' contention as to reasonable doubt, but the statement was clearly obiter. As we have said in the companion case of *Pedigo v. Celanese Corporation of America*, ante, 371, the violation of the injunctive order in this case did not amount to a crime, nor did the proceeding constitute a criminal prosecution under the law of Georgia. Although such a contempt is often referred to as criminal, we think that it is only quasi-criminal, in that it is a violation of an order of court as distinguished from a penal statute. The reasonable-doubt rule in this State, as stated in the Code, § 38-110, applies by its terms only to "criminal cases." The rule appears to have been codified from the decision in *John* v. *State,* 33 *Ga.* 257, in which the plaintiff in error had been convicted of the crime of murder. See also *Giles* v. *State,* 6 *Ga.* 276 (6); *Wasden* v. *State,* 18 *Ga.* 264 (2); *Mitchell* v. *State,* 22 *Ga.* 211 (14) (68 Am. D. 493).

In 1 Greenleaf on Evidence (16 ed., 1899), 158, it is stated: "In *criminal cases* a rule has grown up that the persuasion must be beyond a reasonable doubt. This distinction seems to have had its origin no earlier than the end of the eighteenth century, and to have been applied at first only in capital cases, and by no means in a fixed phrase, but in various tentative forms. 'A clear impression,' 'upon clear grounds,' 'satisfied,' are the earlier phrases; and then 'rational doubt,' 'rational and well-grounded doubt,' 'beyond the probability of doubt,' and 'reasonable doubt' come into use."

In a footnote reference is made to an article in 10 American Law Review (1875), in which article it is stated: "The doctrine of 'reasonable doubt,' as now applied in criminal cases, always invoked by the prisoner and his counsel and enforced by the courts, is one of the modern phases of the tendency to exaggerate the proper signification, and to unduly extend the application of the maxim of which we have been speaking ['the law holds that it is better that ten guilty persons escape than that one innocent suffer,' 4 Blackstone 558]. We say modern, because we have not, after a somewhat extended research, been able to find that the phrase had made its appearance in the courts till about the beginning of the present century. Its first appearance, so far as we have been able to determine, was in the high-treason cases tried in Dublin in 1798, as reported by Macnally, who was himself counsel for the defence." Id. 656.

"It is not at all to be wondered at, that, in criminal cases, it has been the rule to require a greater quantity, weight, or certainty of evidence than in civil cases. As to the mode of proof of particular facts, the rules are substantially the same; but as to the amount of evidence upon which a jury would be justified to find the existence of a particular fact, or the truth of a particular allegation, the rules are widely different. When these rules began to take form and consistency, the penal code of England was a fearfully bloody code. Death, without benefit of clergy, was denounced against a multitude of misdoings which would now be considered, if offences at all, offences of a comparatively trivial character. The consequences of conviction to the unfortunate prisoner were not only fearful, but they were irremediable. No humane judge could help commiserating the situation

of the all but foredoomed prisoner. Even Jeffries himself is said to have so far awakened to the fact that he was human, as to have remarked, in Rosewell's; case, upon the hardship of refusing to a person charged with felony the request to be heard by counsel and sworn witnesses where life, estate, honor, and all were concerned, when these privileges were allowed in a case involving a 'twopenny trespass.'" Id. 651, 652.

The English common law, as it existed prior to May 14, 1776, was adopted as the law of this State by the act of February 25, 1784, except where modified by statute or not adjusted to the conditions or system of government existing here. *Harris* v. *Powers,* 129 *Ga.* 74 (2) (58 S. E. 1038, 12 Ann. Cas. 475). Whether or not the reasonable-doubt rule as now embodied in the Code § 38-110, or in any like form, came to be a part of the law of this State as a result of the act of 1784, or whatever may be its origin, we think it is clear from the foregoing authorities that it applies only in criminal cases, that is, where parties are being tried for the alleged commission of *crimes* as defined in Code § 26-201; and we have not been able to find anything to indicate that the rule was any part of the common law relating to criminal contempts as it existed prior to May 14, 1776. Nor would the reason for the rule as applied to strictly criminal prosecutions call for similar application to criminal contempts under present-day limitation on punishment for such contempt, as stated in Code § 24-2615 (5), which is only a small fraction of the maximum punishment allowed by law for a misdemeanor (Code, § 27-2506)—the lightest grade of offense falling within, the definition of crime, as stated in § 26-201. In connection with Code § 24-2615 (5), see *Bradley* v. *State,* 111 *Ga.* 168 (36 S. E. 630, 50 L. R. A. 691, 78 Am. St. R. 157).

Furthermore, it is the generally accepted view, and it is conceded here, that the preponderance-of-evidence rule applies on the trial of a case of civil contempt, and yet under our law a conviction for civil contempt may bring upon the respondent far more serious consequences in deprivation of liberty and otherwise than the limited punishment permitted by law for criminal contempt. Code, § 24-2615 (5); *Cobb* v. *Black,* 34 *Ga.* 162; *Drakeford* v. *Adams,* 98 *Ga.* 722 (25 S. E. 833); *Tindall* v. *Nisbet,* 113 *Ga.* 1114, 1135 (39 S. E. 450, 55 L. R. A. 225); 12,

Am. Jur. 441, § 75. This being true, there would seem to be no valid reason for applying the more stringent rule on a trial for criminal contempt.

There are several decisions by this court which, though relating more directly perhaps to the function of the reviewing court, would clearly indicate that the preponderance rule applies on a trial for criminal contempt in alleged violation of a restraining order. In *Cabot* v. *Yarborough*, 27 *Ga.* 476, decided in 1859, it was held: "Questions of contempt are for the court treated with the contempt; and its decision ought to be final, except, perhaps, in the case in which the decision shows an enormous abuse of the discretion." In *Hayden* v. *Phinizy*, 67 *Ga.* 758, the defendant was ordered imprisoned ten days for violating a restraining order issued in an injunction case. It was held: "A chancellor has wide discretion in respect to attachments for violating injunctions, and his decision will not be reversed unless that discretion is grossly abused." In the opinion it was stated: "In this case that discretion has not been abused if the chancellor believed the witnesses for the defendant in error; and where these witnesses are contradicted, it is for him to reconcile or give credit where he believes it ought to go, just as a jury may do, and this court will not interfere with his judgment on the facts unless badly abused." In *Warner* v. *Martin*, 124 *Ga.* 387 (52 S. E. 446, 4 Ann. Cas. 180), the defendant in an injunction case was sentenced to pay a fine of $250 for violating a restraining order. This court said: "The judgment rendered on such a hearing will not be disturbed by the Supreme Court, unless the judge has grossly abused the sound discretion vested in him in such cases"; but that "A judge of the superior court has no power to impose a fine of more than two hundred dollars for contempt in violating a temporary restraining order, where the violation was treated by the judge as a single act"; and the judgment was affirmed with direction that $50 be written off the fine.

In *Patten* v. *Miller*, 190 *Ga.* 152 (5) (8 S. E. 2d, 786), it was held: "Whether a contempt of court has been committed in the violation of an injunctive order, and how it shall be treated, are questions for the discretion and judgment of the court that issued the order, and its decision will not be interfered with by this court unless there is an abuse of discretion. If there be any

evidence from which the judge could have concluded that his order had been violated, this court, under the above rule, has no power to disturb his judgment." The defendants in that case were adjudged in contempt of an order of court granted in an injunction suit. The above ruling was quoted approvingly in *Corley* v. *Crompton-Highland Mills*, 201 *Ga.* 333, 338 (supra), in which case judgments imposing fines and imprisonments for violating a restraining order issued in a labor-dispute case were affirmed as to some defendants and reversed as to others.

Accordingly, we hold that the rule stated in Code § 38-110, as to criminal prosecutions, does not apply on the trial of one for criminal or quasi-criminal contempt in disobeying an injunctive order, but the preponderance-of-evidence rule applies. Code, § 38-106.

■ Was the evidence sufficient to authorize the judge to find the respondents guilty? As shown in the statement, it appeared without dispute that about 8:30 p. m. on October 25, Pedigo prepared a statement which was to be read over the radio by Ross and was read by the latter accordingly. This statement was in part as follows: "You may have heard that we have been enjoined against mass picketing. We have talked to our attorneys, Wright & Scoggin, and they tell us that such an injunction, before there has been mass picketing, is without precedent and absolutely illegal. So regardless of what Mr. W. Y. Brown says, let's all be on the line at 5:30 in the morning." This statement clearly indicated actual knowledge by each of the respondents. While they had not been served with a copy of the restraining order at that time, it is the law in this State that "A defendant is bound to obey an injunctive order from the time he has knowledge of it, though not then actually served." *Patten* v. *Miller*, 190 *Ga.* 152 (3) (supra). So, as to such knowledge as the respondents actually had, both were chargeable to the same extent as they would have been had they been duly served with a copy of the order in question; and it is immaterial from what source their information on the subject may have been derived. See also, in this connection, *Corley* v. *Crompton-Highland Mills*, 201 *Ga.* 333 (supra). Considering the evidence as a whole, including the radio address, the question as to the respondents' knowledge presented an issue of fact for determina-

tion by the trial judge, and his finding on that issue cannot be disturbed by this court. See, in this connection, *Lewis* v *Patterson*, 191 *Ga.* 348 (4) (12 S. E. 2d, 593).

The evidence further authorized finding that both the respondents, after acquiring knowledge of such restraining order, violated it in the manner alleged in the petition for citation. See statement of evidence, supra.

*Judgment affirmed. All the Justices concur.*