1. The court did not err in overruling the demurrer to the petition for contempt citation. Pedigo v. Celanese Corporation of America (No. 16,581), 205 Ga. 392 (1).
2. The judge did not abuse his discretion in overruling the motion of the respondents for a continuance of the contempt hearing. Alred v. Celanese Corporation of America (No. 16,583), 205 Ga. 499 (2).
3. In contempt proceedings for alleged violation of a restraining order which is predicated on a petition for injunction, persons not made parties to the original petition, and not shown to have had actual knowledge of the restraining order, are not subject to attachment for contempt for a violation of its terms. But one who is an original party in such case, and who has been duly served, may be chargeable with notice of the issuing of the injunction so that his violation thereof will render him guilty of contempt, even though he has no actual knowledge of the injunction. Corley v. Crompton-Highland Mills, 201 Ga. 333 (39 S.E.2d 861); Carroll v. Celanese Corporation of America (No. 16,582), 205 Ga. 493
(3); 12 Am. Jur. 409, § 27; 17 C. J. S. 23, § 18.
(a) While no entry of service appears in the record as to the plaintiff in error Womack, the only one of the present plaintiffs in error who was named as a defendant in the original injunction suit, yet no question whatever as to service having been raised, it will be presumed that service was duly and properly made upon him. Watson Strickland v. Parian Paint Co., 138 Ga. 621 (3a) (75 S.E. 608).
4. Whether a contempt of court has been committed in the violation of an injunctive order, and how it shall be treated, are questions for the discretion and judgment of the court that issued the order, and its discretion will not be interfered with by this court unless abused. If there be any substantial evidence from which the judge could have concluded that his order had been violated, his finding to that effect cannot be disturbed by this court, in so far as sufficiency of the evidence is concerned. Patten v. Miller, 190 Ga. 152
(5) (8 S.E.2d 786); Pedigo v. Celanese Corporation of America (No. 16,581), 205 Ga. 392.
(a) Under the rulings stated in the two preceding notes, as applied to the evidence in the instant case, the trial judge did not abuse his discretion in adjudging the respondent Lowell E. Womack guilty of contempt in violating the provision of the order restraining the defendants named in the injunction suit, their allies and confederates, "from following any of plaintiff's employees . . to or from the homes of such employees," as charged in the petition for citation.
(b) The judgment finding the respondent Lowell E. Womack guilty of contempt as indicated in note (a) above was not erroneous, even though the *Page 515 
evidence may not have authorized the judge to find him guilty of violating the injunction by shooting at the employee as also charged in the petition for citation; the penalties imposed being within the provisions of Code, § 24-2615 (5), as for a single act. Warner v. Martin, 124 Ga. 387 (4) (52 S.E. 446, 4 Ann. Cas. 180); Cunningham v. Avakian, 192 Ga. 391 (1), 395 (15 S.E.2d 493); Orr v. Dawson Telephone Co., 35 Ga. App. 560 (1) (133 S.E. 924).
(c) Although J. W. Williamon, who was not a party to the original injunction suit, while testifying on the contempt hearing, stated, "I knew there was an injunction but I didn't know there was one for riding up and down the road," this evidence, without more, was insufficient to show any knowledge of the injunction against "following any of plaintiff's employees to or from work or to or from the homes of such employees," for an alleged violation of which the respondent was tried; nor was there other evidence tending to show such knowledge on his part. Lassiter v. Swift Co., 204 Ga. 561
(50 S.E.2d 359).
(d) Nor as to the other plaintiffs in error, Oscar T. Locklear, Donald Pierce, and John Bolin, who were not parties to the injunction suit, was there evidence showing or tending to show that they had any knowledge whatever regarding the restraining order.
5. Accordingly, the judgment finding the five plaintiffs in error guilty is affirmed as to Lowell E. Womack, but is reversed as to the remaining plaintiffs in error.
Judgment affirmed in part, and reversed in part. All the Justices concur.
 No. 16584. JUNE 15, 1949. REHEARING DENIED JUNE 28, 1949.
There are five plaintiffs in error in case No. 16,584, namely, Lowell E. Womack, Oscar T. Locklear, J. W. Williamon, Donald Pierce, and John Bolin. These five were adjudged in contempt of court on a petition for citation filed by Celanese Corporation on November 25, 1948, which petition alleged that such persons violated the restraining order issued on October 25, 1948. Womack is the only plaintiff in error who was a party to the original injunction suit.
The allegations of said petition for citation were as follows:
1. "That it [Celanese Corporation of America] filed in this court on the 25th day of October, 1948, its verified petition for injunction and other relief, . . restraining named persons individually and as representatives of that class of persons who are members of the Textile Workers Union of America . . and their allies and confederates, specifically from engaging in any mass picketing and other specifically described illegal conduct, including picketing on the property of the plaintiff, and from any *Page 516 
acts of coercion, intimidation or from any threats in any way; from following any of plaintiff's employees to or from the homes of such employees, as will be more fully shown by reference to said proceedings."
2. "Notwithstanding such restraining order and injunction, Lowell E. Womack and Oscar T. Locklear did, on November 22, 1948, follow W. M. Johnson, an hourly paid employee of plaintiff, and his wife to their home on Dean Street in the City of Rome, Georgia, and did then and there shoot at the said W. M. Johnson and his wife, all for the purpose of keeping the said Johnson from continuing to work for the plaintiff, in violation of said restraining order and in utter contempt of this court."
3. "Notwithstanding said restraining order and injunction, J. W. Williamon and Donald Pierce did, on November 22, 1948, follow Donald Cox and others, hourly paid employees of plaintiff, in his car to their home in violation of said restraining order and in utter contempt of this court."
4. "Notwithstanding said restraining order and injunction, John Bolin came into the Rayon Pharmacy on November 22, 1948, while Fred Wood an employee of plaintiff, was in said pharmacy, and cursed the said Fred Wood, calling him among other things a son-of-a-bitch. As the said Wood started out of the said pharmacy the said Bolin shoved him and cursed, all in violation of said restraining order and in utter contempt of this court."
The prayer of the petition was that citation issue, requiring the respondents named to show cause "why they should not be adjudged in contempt of the orders and processes of this court and punished accordingly."
The respondents, the present plaintiffs in error, demurred generally to such petition for citation, which demurrer (except ground 2, which is not relied on in this court) was substantially the same as the demurrer that was filed in Pedigo v. CelaneseCorporation of America (No. 16,581), 205 Ga. 392.
After hearing evidence, the judge on December 6, 1948, adjudged these five respondents guilty as alleged in the petition for citation, and imposed on them respectively the following penalties: Lowell E. Womack, Oscar T. Locklear, and John Bolin, a *Page 517 
fine of $200 and 20 days' imprisonment; J. W. Williamon, a fine of $75; Donald Pierce, a fine of $50.
The assignments of error in the bill of exceptions are that the judge erred in (1) overruling the demurrer to the petition for citation; (2) overruling a motion for continuance of the contempt hearing; (3) adjudging these five respondents guilty of contempt; it being contended among other things that the order adjudging the respondents guilty of contempt was contrary to the evidence and without evidence to support it; also that such order amounted to an abuse of judicial discretion.
The motion for a continuance and the judge's certificate touching it were the same as in Alred v. Celanese Corporationof America (No. 16583), ante 499.
The following is considered a sufficient statement of the evidence introduced on the trial as to the act charged in paragraph 2 of the petition for citation:
W. M. Johnson testified: On November 22, 1948, at about 9 o'clock he was in his car going home with his wife. About half way home from town, he entertained the suspicion that he was being followed by an automobile. As he stopped his car in front of the house where he lived, the other car pulled up alongside of him, and recognized L. E. Womack as the driver and Oscar Locklear his passenger. One of the men asked him, "How does it feel to be a yellow-bellied scab?" He reached over to his glove compartment to get his revolver, and when he turned around he noticed that Locklear had a pistol in his hand. The witness is of an excitable nature, and was standing just outside of his car and fired at the car in which Womack and Locklear were riding. He does not know who fired first but heard two shots fired. The defendants were leaving when he fired. When the defendants arrived, his wife screamed for the "cops," as a result of which the defendants left immediately. It was then that he jumped out of the car and fired.
His wife testified: "On the night of the 22nd of November, 1948, my husband and I were riding around and came up to look at the Christmas decorations. On the way home I noticed a car following us and thought it was being driven by a policeman who was checking our speed. When we turned in our drive off of Dean Street, a Buick automobile pulled up beside us and the occupants *Page 518 
started yelling, `You yellow-bellied scab.' My husband started reaching for his gun which he kept in the glove compartment, and I told him to go on and leave us alone, that we lived there. At that time I noticed that the man on the front seat of the car who was sitting next to the driver had a gun and had it pointed out of the window directly at my husband and me. At that time Mr. Dean, special deputy employed by the Anchor Rome Mills, came up, and my husband was getting out of the car, and I heard two pistol shots fired. I was so excited I do not know who fired the first shot. I do know that I asked Mr. Dean to give chase because they were shooting at us."
S. F. Dean testified that as he started to turn in his driveway he heard loud talking. About this time he heard two shots fired, and one of the cars which he saw took off at a fast rate of speed; he gave chase, and when the fleeing car was about 250 yards ahead of him he noticed flashes of two shots being fired from a gun. He radioed for the State Patrol to catch the car of the defendants. When the defendants were brought in by the patrol they brought in three pistols, the magazines of which were all loaded, and he would not be absolutely positive, but would be pretty nearly positive that the flashes which he saw were gun flashes. He further testified that he chased Womack and Locklear for about 5 or 6 miles, with the siren on his automobile going, and could not get them to stop.
State Troopers Barnes and Crawford testified that they arrested Womack and Locklear near Rockmart, that their automobile (the car of defendants) was exceeding the speed limit when the witnesses began to chase them. Barnes testified: "When the car went by, we took after it and overtook it, the speed at the time was between 70 and 75 miles an hour. We stopped them and got out, and called the county police, who had given us the call to be on the lookout; he was after them and we held them until he got to the scene. There were three pistols in the dash of the car, which were a 45, a 38, and a little 25. The larger one had been recently fired for the barrel was warm. We found nothing else in the car but a pair of rubber gloves, which were medium in size."
Frank Russell testified that on the next morning Womack's car was parked in front of the jail, that Womack called his attention *Page 519 
to the place where a bullet had struck the right front fender of the car, that it seemed that the bullet was shot from the back and glanced off the fender. It was his opinion that a person sitting in this automobile could not have made that kind of an impression on the fender.
S. T. Alred testified that he was talking to W. M. Johnson a day or two before the immediate incident took place, that he called Johnson's attention to his inefficiency on the job before the strike, and that Johnson had replied, "I'll get you — some of you God damn boys away from here some of these days, and I'm going to pour it in some of you."
The respondent Lowell E. Womack testified: "I had occasion on November 22 to ride out Second Avenue, the time was about 9 or something around there. I had started out to Roy's Sandwich Shop. Mr. Oscar Locklear was with me. I didn't see anyone in particular on my way out there, that is, until out on Dean Street I saw Mr. Johnson. I didn't say anything threatening to Mr. Johnson. When we pulled up beside of his car I had in mind talking to him. I wasn't out there looking for Mr. Johnson. When we stopped to talk to Mr. Johnson, he reached for his glove compartment and got a gun. I saw the gun. Neither Mr. Locklear nor I pointed a gun at him, and neither of us fired a gun. When he reached for a gun I got away as fast as I could. When we started off a gun was fired at us. I don't remember how many times, but I know it was fired one or two times. As we drove down the highway I presumed he followed us. He came right in behind us. I thought it was him, and that is the reason I didn't stop. As soon as I knew it was an officer I stopped. . . I stopped by Johnson's car because I wanted to talk with him, I wanted to talk and see if he could tell us anything about the mill. Nobody said a word and we didn't point a gun at him. I refuse to answer the question as to why I was riding with three pistols in my car. The court has shown that I had three pistols. I refuse to answer the question as to whether I had a license to carry the pistols. I refuse to answer the question about the rubber gloves. I didn't see Mr. Dean that night. I was looking at Johnson, and if somebody had a gun pulled on you, you would be busy looking at them too, wouldn't you?"
He further testified: "I didn't have a license to carry a gun. *Page 520 
The rubber gloves . . . belong to my wife, she uses them to wash with . . . she doesn't wash in the car, but she carries the washing out to her mother's and uses the washing machine. . . I have a .45 caliber automatic. I've had it in my car since 1946, I believe."
The testimony of the respondent, Oscar T. Locklear, corroborated in general that of Womack. As to the pistols, he testified: "Two of the guns in the car belonged to me and one to my sister . . . The gun that belonged to me was the German Luger, my sister's was a 25 German automatic."
As to the charge contained in paragraph 3 of the petition for citation, the plaintiff introduced Donald Cox and other witnesses, who testified to circumstances tending to support such charge; but there was no evidence to show that either J. W. Williamon or Donald Pierce had any knowledge regarding the injunction, unless the statement made by Williamon himself should be taken as indicating knowledge on his part, which statement was, "I knew there was an injunction, but I didn't know there was one for riding up and down the road."
As to the charge contained in paragraph 4 of the petition for citation, no evidence was introduced with respect to whether the respondent named in that paragraph had any knowledge of the injunction.