1. There was no error in overruling the demurrer to the petition for citation or rule nisi for contempt. Pedigo v. Celanese Corporation of America (No. 16,581), 205 Ga. 392 (1).
2. Where a deputy sheriff, in undertaking to serve a petition, process, and restraining order upon a defendant named therein, went to the defendant, and while about three feet from him told the defendant that he had a paper for him, and the defendant said, "You ain't got no paper for me, I haven't done anything," and the officer then handed him the paper and told him, "Well, here it is anyhow," and the defendant refused to take it, whereupon the officer stuck it at him, and the defendant still refusing it, the officer "dropped it at his feet" — held, that such facts, if duly proved, would show valid personal service upon such defendant. In re Ball 2 Cal.App.2d 578
(38 P.2d 411); 50 C. J. 485, § 84; 16 L.R.A. 200, 201.
(a) From statements of counsel made in open court with respect to service, considered in connection with a stipulation as to what a deputy sheriff if present in court (he being absent on account of sickness) would testify as to service on the plaintiff in error Dodd, and with the testimony of Dodd himself on the issue, the judge was authorized to find that this plaintiff in error, as a party to the original injunction suit, was duly served in person with the suit and the injunctive order.
(b) The testimony of the plaintiff in error Carroll as given on the contempt hearing showed within itself that he was duly served in person at his home the night before the alleged violation.
3. A party defendant to an injunction suit who has been duly served may be chargeable with notice of the issuing of the injunction so that his *Page 494 
violation thereof will render him guilty of contempt, even though he may not have read the papers served on him, so as to have actual knowledge of the terms of such injunction. Murphey v. Harker, 115 Ga. 77 (4, 5) (41 S.E. 585); Patten v. Miller, 190 Ga. 152 (8 S.E.2d 786); Corley v. Crompton-Highland Mills, 201 Ga. 333
(39 S.E.2d 861); 12 Am. Jur. 409, § 27; 17 C. J. S. 23, § 18.
(a) Under the preceding rulings, it is unnecessary to determine whether the respondents were entitled to question the sufficiency or validity of the service, in the absence of any traverse of the entry of service at or before such contempt hearing.
4. Whether a contempt of court has been committed in the violation of an injunctive order, and how it shall be treated, are questions for the discretion and judgment of the court that issued the order, and its discretion will not be interfered with by this court unless there is an abuse of discretion. If there be any substantial evidence from which the judge could have concluded that his order had been violated, his finding to that effect cannot be disturbed by this court, in so far as sufficiency of the evidence is concerned. Patten v. Miller, 190 Ga. 152 (5) (supra); Pedigo v. Celanese Corporation of America (No. 16,581), 205 Ga. 392.
5. Under the foregoing rulings as applied to the instant case, the judge was authorized to find that the respondents (plaintiffs in error) violated the restraining order by engaging in mass picketing, as charged in the petition for citation.
6. The facts that the petition for citation also charged violation of such restraining order otherwise than by mass picketing, and the evidence may have failed to show such other violation, did not render erroneous the judgment finding the respondents guilty and imposing penalties within the provisions of Code § 24-2615 (5), as for a single act. See Warner v. Martin, 124 Ga. 387 (4) (52 S.E. 446, 4 Ann. Cas. 180); Cunningham v. Avakian, 192 Ga. 391 (1), 395 (15 S.E.2d 493); Orr v. Dawson Telephone Co., 35 Ga. App. 560
(1) (133 S.E. 924).
7. The judgment complained of was not erroneous for any reason assigned.
Judgment affirmed. All the Justicesconcur.
 No. 16582. JUNE 15, 1949. REHEARING DENIED JUNE 28, 1949.
The plaintiffs in error in this case (No. 16,582) are A. C. Carroll and H. D. Dodd. They except to a judgment finding them guilty of contempt in alleged violation of a temporary restraining order and imposing penalties within the provisions of Code § 24-2615 (5). The petition for citation alleged that these respondents violated this restraining order by engaging in mass picketing and by other acts. The petition for citation here involved is the same as was dealt with in Pedigo v. CelaneseCorporation of America (No. 16,581), 205 Ga. 392, and the *Page 495 
present plaintiffs in error demurred generally to such petition, on substantially the same grounds as did the respondents in that case. The assignments of error made in the present bill of exceptions and insisted on by counsel for the plaintiffs in error are that the court erred in, (1) overruling the demurrer to the petition for citation, and (2) adjudging the respondents, now plaintiffs in error, in contempt; it being contended among other things that the order finding and adjudging the respondents guilty of contempt was contrary to the evidence and without evidence to support it; also that such order and judgment amounted to an abuse of judicial discretion.
In the brief of counsel for the plaintiffs in error, it is stated that both of these parties were defendants in the original injunction suit, and they are both dealt with and treated in the brief as having been such parties defendant, although for some reason, perhaps inadvertence, the name of A. C. Carroll does not appear in the official transcript of the original suit for injunction as transmitted to this court. As to this, see Rules 14 and 15, Code, §§ 24-4515, 24-4516.
It is also stated in the brief for the plaintiffs in error, Carroll and Dodd, that both of them were shown to have been in the picket line at the main gate in the early morning of October 26. In an affidavit of Harold T. Jones, introduced by the plaintiff, it was stated: "2. On October 26, 1948, at a few minutes before 6 a. m., I was walking from my house, which is on Redwood Street, to the mill and as I neared the mill I saw several hundred pickets massed at or near the main gate. The ranks in front of the main gate were approximately 3 deep in a solid mass. . . 5. I stayed on duty in the watchman's house until 6 p. m. with the exception of my lunch hour. During this time I saw the following men picketing at or near the main gate who I recognized by name," naming 19 persons, including A. C. Carroll and H. D. Dodd. Another affidavit, introduced by the plaintiff and signed by M. H. Davis, contained the statements: "1. I am employed by Celanese Corp. of America at Rome, Georgia; on October 26, 1948, at about 7:45 a. m. I arrived at the main gate of the plant. I drove up in my car and as I approached the gate there appeared to be about 450 to 550 persons" gathered "about the gate and in the street in front of the gate. They were *Page 496 
milling around and across the entrance to the gate there was a long line of pickets walking back and forth very close together and two abreast. . . 2. I recognized the following persons in the crowd and participating in the picketing:" naming 15 persons, including A. C. Carroll and H. D. Dodd. There was other evidence as to participation by Carroll in mass picketing on the same date, October 26. It also appears from the testimony of the respondents that they engaged in mass picketing on October 26.
However, on the evidence, it is contended that the judgment finding these plaintiffs in error guilty of contempt of court should be reversed, because it appears that such respondents did not have actual knowledge of the existence of the restraining order at the time of the alleged violation.
It appears in the record that after some evidence had been introduced, Mr. Rogers, of counsel for the plaintiff, Celanese Corporation, stated to the court that he would dismiss the particular citation as to all respondents except Dodd and Carroll; whereupon the following further statements were made by the judge and counsel, including Mr. Wright, attorney for the respondents:
"The Court: As I understand it, you are dismissing all except as to Mr. Dodd, who was served on October 25, or so entry of service shows, and Mr. Carroll, you haven't had him on yet."
"Mr. Rogers: He was also served on October 25."
"Mr. Wright: We will also ask the court to allow us to withdraw all the evidence that we drew out in the testimony of the persons in regard to the persons that we are dismissing as to."
"The Court: That remains the citations against Dodd and Carroll."
"Mr. Wright: Dodd and Carroll, both of whom were served prior to that morning;" referring to the morning of October 26.
It also appears from the record that the following stipulation was then made in open court: "Mr. Rogers: It is stipulated that Frank Russell would testify that on October 25th he went to Mr. Dodd; that he was standing about three feet away from him and told Mr. Dodd that he had a paper for him; that Mr. Dodd says, `You ain't got no paper for me, I haven't done anything'; that Frank then handed him the paper and told him, *Page 497 
`Well, here it is anyhow,' and Dodd refused to take it, and that he stuck it at him and Dodd still refused to take it and he dropped it at his feet." "Mr. Graham Wright: Will stipulate that Frank Russell would testify that. He is home sick in bed."
A. C. Carroll testified: "With reference to the entry of the deputy sheriff on this suit which shows that I was served at 8:30 p. m., October 25th, with a copy of the original petition and process, as to whether or not I was served with it at that time — well, no, it was about 10." He then stated he had "got in bed" and somebody "pecked on the door, and I went to the door, and it was Frank Russell, and he said, `Well, I have got some papers for you'; I said, `All right'; he signed them and handed them to me, I shut the door and walked back and laid them on the dresser and got back in bed. . . As to whether or not he said anything about what kind of papers they were — well, no, he didn't say anything about what it was, he just said he had some papers for me, and I reached out and taken them. . . As to when I first heard that that paper was an injunction, well, I didn't hear about it until some time after noon. . . As soon as I heard the injunction had been granted I left; went on back home and got mine and read it. As to whether or not I had any intention of violating any order of the court, well, not as I know of; if I did, it was unbeknowing to me."
On cross-examination by Mr. Rogers, of plaintiff's counsel, he testified: "There is no question about me having been served on the night of October 25th. I was served somewhere around 10 o'clock. It was some time along in the afternoon that when I went home and read it." Mr. Rogers then asked: "And then every day since that time you have been on the picket line, haven't you?" Mr. Wright, of counsel for respondents: "Your Honor, I don't believe that on this citation that would be admissible. I presume there are other citations against him." Mr. Rogers: "I think it is admissible for this purpose, if Your Honor please, to show the intent of the man." The Court: "Yes, that would go the intent and credibility." Mr. Rogers: "You have been back on the picket line every day since then, haven't you, Mr. Carroll?" Witness: "Well, I have been out there, yes."
H. D. Dodd testified: "With reference to the entry of the deputy sheriff showing that he served me about 8:30 on the night *Page 498 
of the 25th, as to just what occurred at that time — well, he came out to the tent, Mr. Russell did, where I was at, . . I walked up to see who it was; he asked where Mr. Pedigo was at, I told him I didn't know . . that he was in town probably, and someone called me back to the telephone in there, and I started back, and I heard one of the watchmen in the car say, there is Dodd, give him his now, so he says, wait a minute, I have got some papers for you. I had got down on the back something like 8 or 10 feet from the car and I say, `You haven't got any papers for me. I am not supposed to have any'; he says, `Yes, they said to give you some,' and I say, `Well, I don't want any.' I went on to the telephone and he threw them down in the street there. He didn't say what kind of papers there were, he just says, here they are, take them and do as you please with them; I says, `I don't want them.' . . I said I was at the picket tent when Mr. Russell came up out there. As to whether or not as a matter of fact I was about 3 feet away from Mr. Russell — well, no, I was further than that. As to whether or not Mr. Russell tried to hand me the paper and I refused to take it — well, he stuck them out the window for me to walk up and get. As to whether or not I told him I didn't want any paper, that he didn't have none for me that I wasn't going to take — well, I did say that. As to whether or not Mr. Russell then told me, `Well, here it is, it is yours,' and I still refused to take it, and then Mr. Russell dropped it at my feet — well, no, it wasn't at my feet. As to how far it was — well, as I said, I had started back to the tent, and he called me and said, `Wait a minute, I have got some papers for you,' and I stopped, I was 6, 7, or 8 feet from him. As to what became of the papers — well, they laid out there in the street, someone picked them up, I couldn't say who picked them up nor when they were picked up, but some time during the night. I don't know what became of them. As to when I saw them again — well, Shorty McClain gave it to me the next morning about eleven o'clock."
On cross-examination by Attorney Rogers, Dodd was asked: "Mr. Dodd, have you been back on the picket line every day since you got your petition for injunction, haven't you?" Mr. Wright: "Just to kept the record straight, I wish to interpose the objection that that would be immaterial and irrelevant on this *Page 499 
citation for contempt." The Court: "I overrule the objection. I hold it would go for the purpose of showing intent and credibility." Mr. Rogers: "You have been back on the picket line every day since then, haven't you?" Answer: "That is right."