**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 2, 2016**

# In the Court of Appeals of Georgia

A16A0369. SPACE COAST CREDIT UNION v. GROCE.                PE-015

PETERSON, Judge.

Space Coast Credit Union ("Space Coast") filed a lawsuit against Robert Steve Groce to reinstate a first priority deed to secure debt. When Groce did not file an answer, Space Coast moved for summary judgment. The trial court denied the motion, ruling that Groce had not been served properly. Space Coast brought this interlocutory appeal, arguing that the trial court had erred in concluding that (1) Groce was mentally impaired and unable to accept service when it was attempted and (2) a process server is required to interact and speak with a defendant at the time of service. Because the trial court did not abuse its discretion in finding that service was not proper when the process server merely left the papers at Groce's bedside as he lay semi-conscious (at best), we affirm.

Groce failed to file a responsive brief, and so he is deemed to admit the statement of facts as set out by Space Coast to the extent supported by the record. *See Green v. Waddleton*, 288 Ga. App. 369, 369 n.1 (654 SE2d 204) (2007). So viewed, Groce refinanced the first priority loan secured by his home with the same lender that he had previously used, Eastern Financial Florida Credit Union ("EFFCU"). Shortly after the closing, EFFCU erroneously executed and filed a cancellation of the first priority deed, even though the deed had not been satisfied in full. Years later, EFFCU's successor company, Space Coast, filed this lawsuit, seeking to reinstate the deed.

A week after the complaint was filed, a process server attempted to serve Groce at the property that secured the loan. The process server averred that he spoke to a woman there who claimed to be Groce's daughter. She said that her father did not live there but would not share his whereabouts. A little more than a week later, the same process server attempted to serve Groce at a nearby nursing home. In his affidavit, the process server said that Groce, who appeared to be in his late 60s or early 70s, "was sleeping in his bed and in and out of consciousness" and was "unable to take the papers." The process server said that he put the papers on a table next to the bed.

Groce filed no answer to the suit, and Space Coast filed an unopposed motion for summary judgment, arguing that because the underlying indebtedness on the loan had not been satisfied, the cancellation did not re-convey title to Groce. Space Coast sought a declaratory judgment that the deed remains the first priority deed and that the cancellation was null and void. Having taken testimony from the process server at a hearing,[1] the trial court denied the summary judgment motion on the basis that Groce was not properly served and therefore the court lacked personal jurisdiction over him. Finding that the affidavit of service provided evidence that Groce was "mentally impaired" at the time of service and the process server's live testimony at the hearing was insufficient to overcome this evidence, the trial court found that Groce was incapable of accepting the service documents when they were left at his bedside. The trial court found that the process server "was aware of the Defendant's condition" and "could not have reasonably believed that the Defendant was aware service was being attempted." The trial court issued a certificate for immediate review, and we granted Space Coast's application for interlocutory appeal.

---

[1] The record indicates that this hearing was held as part of a "no service" calendar prior to the filing of the motion for summary judgment. However, the hearing was not transcribed and the trial court did not issue a written order on the issues raised by the attempted service until after that motion was filed.

"Absent a showing of an abuse of discretion, a trial court's finding of insufficient service of process must be affirmed." *Franchell v. Clark*, 241 Ga. App. 128, 131 (3) (524 SE2d 512) (1999). "The trial court as factfinder must decide whether the evidence overcomes the facts reflected in a return of service, and we will uphold that finding if it is supported by any evidence." *Holmes & Co. of Orlando v. Carlisle*, 289 Ga. App. 619, 620 (1) (658 SE2d 185) (2008).

1. Space Coast argues that the trial court erred by finding that Groce was mentally impaired at the time of service. It is difficult to evaluate this factual finding, because no transcript was made of the hearing. Moreover, it is unclear exactly what role this finding played in the trial court's analysis. The trial court referenced OCGA § 9-11-4(e)(4), which provides that a person "who has been judicially declared to be of unsound mind or incapable of conducting his or her own affairs and for whom a guardian has been appointed" must be served via their guardian or guardian ad litem. But the trial court also recognized that there is no evidence in this case that Groce has been declared legally incompetent, and the court did not say explicitly that the procedure outlined in OCGA § 9-11-4(e)(4) must be followed here.

If the trial court did measure Space Coast's service attempts against the rule of OCGA § 9-11-4(e)(4), the trial court erred. Unless and until a court determines that

a person is civilly incompetent or in need of a guardian, the requirements for serving someone who is incompetent do not apply and any lawful means of service will confer personal jurisdiction over him. *Trammel v. Bradberry*, 256 Ga. App. 412, 415 (1) (568 SE2d 715) (2002) (physical precedent only) (construing substantially identical prior version of statutory provision) (*citing Sellers v. Bell*, 151 Ga. App. 440, 441 (1) (260 SE2d 538) (1979)). The trial court here sought to distinguish *Sellers* – in which we found that personal service was proper when the defendant was not declared incompetent until after he was served with papers — on the basis that in that case there was no evidence that the plaintiff was aware of the defendant's mental condition. However, an examination of *Sellers* reveals that the reference to the plaintiff's lack of knowledge is merely dicta. *See Sellers*, 151 Ga. App. at 441 (1) (holding service sufficient because "no such [judicial] determination [of incompetency] had been made of the defendant until several months after the plaintiff had served the defendant with her complaint and summons"). The statute contains no exception to its condition precedent of a judicial determination of incompetence. *Sellers* provides no authority for implying an exception based on a process server's subjective knowledge of a defendant's mental condition. We decline to imply such an exception ourselves. The question for us, then, is whether it was an abuse of

5

discretion to find that Space Coast did not properly serve Groce under the usual rules for service of process.

2. Space Coast argues that the trial court erred by finding that Groce was "incapable of accepting the service documents" and that the process was inadequate because the process server did not speak to or otherwise interact with Groce to alert him to the fact that service was being attempted. OCGA § 9-11-4(e)(7) provides that service on an individual defendant generally may be made by "delivering a copy of the summons attached to a copy of the complaint . . . to the defendant personally." We have found no Georgia authority, and Space Coast has cited none, addressing directly whether leaving papers next to a person who is asleep or is otherwise unaware of the delivery amounts to "delivering" a summons "personally" as those terms are used in OCGA § 9-11-4(e)(7).

A review of relevant case law and the text of the statute as a whole convinces us that the answer to that question is no. In order for merely leaving papers where the defendant lives or works to constitute valid service under OCGA § 9-11-4(e), certain requirements must be met. For valid service to be effectuated by leaving papers at the door of a defendant's home, for instance, the sum involved in the case must be less than $200, reasonable efforts to obtain "personal service" must have been made first,

6

the papers must be placed in a waterproof packet, and a copy also must be mailed. *See* OCGA § 9-11-4(e)(6). In order to serve an individual defendant by delivering the papers to the defendant's workplace, they cannot be left with just anyone, but only with "an agent authorized by appointment or by law to receive service of process." OCGA § 9-11-4(e)(7); *see also Ameribank v. Quattlebaum*, 220 Ga. App. 345, 346 (1) (469 SE2d 462) (1996) (debtor not "personally served" when deputy gave papers to a receptionist and debtor found them on his desk). These separate provisions, with their additional safeguards, suggest that serving a defendant "personally" means something more than merely leaving papers in the vicinity of an unaware defendant.

In *Carroll v. Celanese Corp. of America*, 205 Ga. 493, 493 (2) (54 SE2d 221) (1949), cited by Space Coast, our Supreme Court held that personal service would be valid if a deputy sheriff had dropped the papers at the defendant's feet. However, that ruling was premised on the assumption that the deputy and defendant had a conversation and the defendant had refused to take the papers. The defendant was aware that service was being attempted and thus was on notice of the lawsuit against him, and the Court simply refused to reward the defendant's knowing refusal. *Id.*

This case presents a different set of circumstances: an elderly, dozing defendant unaware of the process server's efforts, and the distinction has constitutional

7

implications. In order to comply with state and federal concepts of due process, the method of service must be "reasonably calculated to give [a defendant] actual notice of the proceedings and an opportunity to be heard." *Melton v. Johnson*, 242 Ga. 400, 403 (249 SE2d 82) (1978) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463 (61 S. Ct. 339, 85 LEd 278) (1940)); *see also Benton v. Modern Finance & Inv. Co.*, 244 Ga. 533, 534 (261 SE2d 359) (1979) (method of service may be constitutionally defended on ground it is "reasonably certain to inform those affected or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes") (*quoting Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (70 S. Ct. 652, 94 LEd 865) (1949) (punctuation omitted)). Our Supreme Court previously declared unconstitutional as violative of due process a statute that authorized service by merely leaving a copy at the defendant's most notorious place of abode. *Benton*, 244 Ga. at 535. The Court based its decision on concerns that such a means of service "is not reasonably calculated to apprise [the defendant] of the pendency of an action against him." *Id.* The Court suggested that, with that method of service, the papers may not reach the defendant promptly, as he may be absent from the home for some period of

8

time or in the process of moving, or the papers might be destroyed by bad weather or removed by someone else. *Id.*

Although the mode of service employed is different, the concern is the same. Groce might not have noticed the papers for some period of time, if ever. A nurse or housekeeper might have thrown the papers away. Moreover, we may reverse the trial court's decision in this case only if it amounted to an abuse of discretion. *See Franchell*, 241 Ga. App. at 131 (3). Although Space Coast may be correct that there is no requirement that a process server always must engage in dialogue about service with a defendant and ensure that the defendant understands and acknowledges service, it was not an abuse of discretion for the trial court to find, under the facts of this case, that some communication was required to ensure that the (at best) semi-conscious defendant had fair notice of the lawsuit.

Space Coast argues that the trial court's ruling means that service on Groce may not be possible, contending that the order means that Space Coast will need to pursue a probate court's determination as to Groce's competency and, if he is adjudicated incompetent, seek the appointment of a guardian for him. However, we do not think that the rule applied here necessarily would leave a plaintiff attempting to serve a defendant such as Groce without other options. A process server

9

encountering an incapacitated defendant might attempt to rouse the defendant, or simply return another time. Alternatively, the process server might leave papers "at the defendant's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein." OCGA § 9-11-4(e)(7). And, in any event, if the current statute does not provide practical options for a plaintiff in Space Coast's shoes, the proper recipient for such a complaint is the General Assembly. Unlike this Court, the General Assembly is vested with authority to amend the statute. We, however, can only apply it.

*Judgment affirmed. Phipps, P. J., and Dillard, J., concur.*